J. R. POWELL et al., Plaintiffs in Error, *v.* JOHN F. MILLS, Defendant in Error.

1. COMMON CARRIERS.—A common carrier is responsible for all loss and damage to property intrusted to him for transportation, except such as result from the act of God, or the public enemy.
2. SAME: PROPRIETORS OF MAIL COACHES.—*Prima facie*, the proprietors of a stage-coach, used in carrying the United States mail, and passengers and their baggage, are not to be considered as common carriers, as to articles not strictly and technically in that line of business; but if it be established, that they are constantly in the habit of carrying a certain class of goods for hire, they will then be liable as common carriers for all goods of that description received by them for transportation.

IN error from the Circuit Court of Monroe county. Hon. William L. Harris, judge.

On the 17th day of January, 1852, the defendant in error, John F. Mills, sued the plaintiffs in error, as proprietors of a stage, for one thousand dollars, for damages sustained by plaintiff, by reason of two packages of goods delivered to defendant, in Alabama, to be carried to Aberdeen, Mississippi, being submerged

in a river on the route. · The first count was against the defendants, as common carriers of goods and merchandise; and the second count against them as proprietors of a stage-coach, running from Tuscumbia, Alabama, to Columbus, Mississippi, and averred that the damage to the goods was caused by their negligence. To the first count, the general issue was pleaded, and to the second, the defendants demurred. The demurrer was overruled, and leave given to the defendants to answer over; and the plaintiff then withdrew his second count, by leave of the court. The cause was submitted to a jury upon the first count, and general issue pleaded thereto, and a verdict returned for plaintiff, of. $395.54; and judgment was rendered accordingly. A motion for, a new trial was made, and overruled, to which the defendant took his bill of exceptions, and sued out this writ of error.

The testimony in the case for the plaintiff, was substantially as follows:—

L. E. Houston, proved that, about the 25th of August, 1851, at Tuscumbia, Alabama, he delivered two trunks, the property of plaintiff, to the agent of defendants, who agreed to convey them on the mail coaches of defendants, to be delivered at Aberdeen, Mississippi, where the price of transportation was to be paid. That the trunks were sent on the second trip thereafter. That he went to the river after the accident occurred, and saw the same trunks lying on the bank of the river, very wet.

Dr. Bowman, stated that he knew the defendants, and that about the 1st of September, 1851, they were proprietors of a line of stages, running from Tuscumbia, Alabama, to Columbus, Mississippi; that the defendants, on or about the 1st of September, 1851, brought two large trunks on one of their coaches to the Tombigbee river, near Aberdeen; that when the coach reached the river it was dragged out of the ferry-boat by the horses, and the trunks were submerged in the water, and when recovered, were very wet; that the coach was drawn into the river whilst the. driver was watering the horses, and that no one then held the lines or bridle; that the defendants were in the habit of carrying trunks and baggage for hire, on their coaches, not belonging to the passengers; that they had so carried baggage for him.

One Lemon, stated that he was present when the the stage was dragged in the river ; that he was the ferryman. That the horses became frightened whilst the driver was standing before them, and ran into the river; that the driver was then giving them water. That the ferry-boat had no banisters at the sides, and no cross-chains before or behind. That Mills, the plaintiff, was proprietor of the ferry at the time. That the driver sometimes watered the horses when crossing the river, and sometimes did not. That the team hitched to the stage at the time of the accident, was wild and easily scared. That he let go the ferry line when about half way across the river, and did not use the pole in pushing the boat over. That the stage sunk in the water deep enough to submerge a good portion of the boot, and sufficiently to wet the trunks in the lower part.

Henry Lemon, stated that he arrived at the river soon after the accident, and found plaintiffs' trunks wet; that he had been ferryman at that place, and usually let go the line when half way across the river, and gave the boat a push to the landing, and then stood in the front part of the boat to catch with a pole, to which a hook was attached.

James D. Tatum, stated that he examined the contents of plaintiffs' trunks after they were wet in the river ; that they contained some wearing apparel and some fine new silk goods, of which the plaintiff's bill of particulars, filed with his declaration, contained a correct description. That the goods were so much damaged that he considered them worthless; that goods of this sort cost, in New York, about what is charged for them in the bill of particulars, and were worth seventy-five per cent. more in Aberdeen. That he had sent boxes, trunks, &c., on defendants' stages several times, and paid for the transportation. That he had contracted, both before and after the 1st of September, 1851, with one of the defendants, for them to receive such packages, trunks, &c., on their stage line from the North, and that he was to pay for them according to size and weight.

G. C. Summey stated that he had, on two occasions, sent packages to Tuscumbia, Alabama, by the stage-coaches of defendants, and paid for them. That he had travelled on their line from Aber-

deen to Tuscumbia, and that their usual business was, so far as witness could ascertain, to carry passengers and their baggage.

T. G. Ganet's deposition was also read, which stated in substance, that in September, 1851, he kept a hotel in Tuscumbia, Alabama, at which place was the stage-office of defendants. That he acted as their agent at that point, in forwarding passengers and baggage, and goods and chattels, on their line, and receiving pay therefor. That it was the habit and custom of defendants to transport trunks, packages, &c., not belonging to passengers, on their stage lines, for hire. That he frequently forwarded such articles, as their agent, and received pay for it. That there was no fixed price for such transportation, but a special contract, as to price, was made in each case. That, on the 1st of September, 1851, he received $4 from Dr. Bowman, for an extra trunk, carried by defendants' stage from Tuscumbia to Aberdeen. That he knew of no public notice given by defendants, that baggage was to be at the risk of owners; but he thinks that something of that sort was printed on the way-bills, which, however, were not usually seen by any persons other than the proprietors of the line, the drivers, and the agents.

W. P. Haughton, stated that he had frequently received boxes of patent medicines from Tuscumbia, on defendants' stages, paying them therefor, $4 per box. Witness confirmed statement of J. D. Tatum, in relation to the damage to the goods, and their value.

W. H. Clapton, testified that defendants had transported two trunks for him on their stages, and had received pay therefor.

The bill of particulars filed with the complainant, stated the New York cost of the goods to be $236.

The defendants then introduced Peter Plumb, who stated that he was the driver of the stage for defendants, at the time the accident happened. Plaintiff objected to his competency, on account of his interest, he being liable to defendants for damage resulting from his negligence. The objection was sustained, and the witness excluded. Defendants excepted. The defendants' counsel then offered to the witness a release under seal, executed in their names, by W. F. Dowd, their attorney. Mr. Dowd stated that

he had no direct authority to execute the release, but that his clients were non-residents, and had given him a general authority to do whatever he might think necessary in the defence of the suit. Defendants again offered Plumb as a witness, but he was excluded on objection of plaintiff, and defendants excepted.

J. D. McAllister, for defendants, stated that he was, for some time prior to, and had been ever since the year 1851, familiar with the business of defendants; that they owned a line of stages, running from Tuscumbia, Alabama, to Columbus, Mississippi; that their regular and usual business was, to carry the mail, and passengers and their baggage; that they did not carry dry-goods and chattels on their coaches, as a part of their business, so far as he knew. They sometimes carried packages for hire, not belonging to passengers; that he never knew them to refuse to carry packages for pay.

James D. Douglass, for defendants, stated, that in the year 1851, and until June, 1853, he was the agent of defendants, in the management of their stage-coaches, running from Tuscumbia, Alabama, to Columbus, Mississippi, through Aberdeen, where he resided; that the defendants did not carry dry-goods and chattels for persons in general, as a part of their business. Extra baggage was sometimes carried, and charged for at an extra price; had received a good many trunks and packages from other points on the line, but had not forwarded many from Aberdeen. That he had refused to forward packages on two occasions, because the owners would not send them at their own risk. That it was a part of his business, as agent, to examine the contents of the defendants' stages, as they passed up and down the line, and that he had a fair opportunity to know what their usual course of business was. The team hitched to the stage at the time of the accident occasioning damage to defendants' goods, were as gentle as good, spirited horses generally are, and had been used on the road ten or twelve months prior to the accident.

The court instructed the jury, at the request of plaintiff, as stated in the brief of Messrs. Sale and Phelan.

For the defendants, the court was asked to instruct the jury:—

1. That unless they believe, from the evidence, that the defend-

ants are common carriers of goods and chattels, they must find for the defendants.

3. It is not every person who carries, or undertakes to carry goods for hire, that is deemed a common carrier. To make the defendants liable as common carriers, it must be shown that they, as proprietors of a line of stage-coaches, undertook to carry goods for persons generally, and that they hold themselves out, as ready to engage in that business, and that by "casual occupation," the jury are to understand, an occasional accidental carrying, and not a general practice.

4. That if the defendants are shown by this testimony, to have carried passengers and their baggage for hire, as a public employ-ment, they are liable as common carriers; but by the term baggage, the jury are to understand such articles of necessity or personal convenience, as are usually carried by passengers for their perso-nal use, and not costly silks and dress goods generally.

5. That if the jury believe from the evidence, that the trunk of plaintiff was placed on the mail-coach of defendant, as the ordinary baggage of a traveller, and paid for as such, without any notice, directly or indirectly, that the trunk contained costly and silk goods, the plaintiff is not entitled to recover the value of such goods.

All of which were given, except the 4th and 5th. The second instruction is not contained in the record.

*W. F. Dowd*, for plaintiff in error.

1. John F. Mills, was the owner of the ferry; Peter Plumb, was the driver of the stage, witnessed the transaction, and it was com-petent for defendant to prove by Plumb, that the accident resulted from the act of Mills's own agent, and to contradict the witnesses of plaintiff, as to the usual occupation and business of the defend-ants, &c.

The only ground for the exclusion of this witness was, as alleged, that he was liable over to the defendants, for damages. The court *assumed the fact*, unwarranted by the testimony, that the driver had been guilty of such gross negligence as rendered him liable. He was obliged to water his horses. The defendants furnished him with no person to hold them. There never was a stage-driver

or a stage that crossed the river, who did not water the team in hot weather, without having an extra servant along to hold the horses.   It is true, that when the master calls the servant or agent, who drives the cart or stage, in an action against *the master for negligence*, the witness has been held incompetent by some judges, though in *Sherman* v. *Barnes*, Tindall, C. J., doubted the rule. 1 M. & R. 69.   But here the action is against the *defendants as common carriers*, and they may be held liable for all accidents without fault.   The second count in the declaration for negligence was abandoned.   The verdict against the common carrier *as an insurer*, would not be evidence in any event, in an action by the carrier against his servant for *negligence*.

2. The court erred in refusing the second charge asked by defendant.   The whole question was, were the defendants common carriers of goods and chattels 'generally, or was it their business to carry passengers and their baggage?   If the latter, it is clear the defendants were not liable.   The costly silks, and dry goods sued for, are not the ordinary baggage of a traveller.   This term only includes necessary wearing apparel, &c., for the journey; where money was enclosed in a box of tea, the carrier was not liable, for the reason that he received his pay to carry the tea, not the money.   *Bradley* v. *Waterhouse*, 3 Car. & Paine, S. C. 318; *Miles* v. *Cattle and Another*, 6 Bing. 743; 19 E. C. L. 219. The defendants were liable for baggage usually sent in trunks, but courts will not allow under the pretence of baggage, to include costly silk goods, diamonds, costly jewelry for sale, &c.   *Orange County Bank* v. *Brown*, 9 Wend. 114, 117, 119.   In the case of *Sewell* v. *Allen*, 6 Wend. 335, overruling the Supreme Court, in 2 Ib. 327, it is decided that a common carrier is an insurer; that he must know the value of the article to fix the rate; that the package was put on the boat, and its value unknown to the captain, and therefore the company were not liable.   Opinions of Oliver and Tallmadge, 6 Wend. 362, 363, 364; *Porden* v. *Drew*, 25 Ib. 460. These observations and authorities show the error of the court in refusing the 5th charge asked by defendants.

3. The testimony proves that the defendants were common carriers of passengers and their baggage, not for the transportation

of goods generally. M'Allister and Douglass, who had the best means of knowing the business of the defendants, say that it was not part of their business to carry goods and chattels, dry goods, &c., for hire. Occasionally, packages were carried for accommodation, when it suited the convenience of the company. G. C. Summey states the same thing. The small packages and trunks carried for Tatum, Bowman, and Dr. Hampton, only constitute the exceptions alluded to by M'Allister.

The defendants are not common carriers of silks, dry goods, &c. To make a person a common carrier, he must exercise it as a public employment, *must hold* himself out as ready to engage in the transportation of goods *for hire, as a business,* and not as a casual occupation. *Satterlie* v. *Groat,* 1 Wend. R. 272; Story on Bail. § 495.

Although a stage-coach proprietor may carry occasionally, packages for hire, *and even all that are offered,* this does not make him a common carrier. He must hold himself out as ready to carry for all persons who request him. *Sheldon* v. *Robinson,* 7 New Hamp. R. 163, 164, 165; Story on Bail. § 500.

The true test seems to be this: if the proprietor of the stage-coach, or his agent, is liable to an action for refusing to carry goods, he is a common carrier, and not otherwise. 7 New Hamp. 162, 163; *Sewell* v. *Allen,* 6 Wend. 364; opinion of Tallmadge.

*Sale* and *Phelan,* for defendants in error.

The charge of the court, involves the matter for decision. There can be no dispute about the facts.

For the plaintiff below, the court charged:

1. That if it was the *"practice"* of defendants, to carry goods in their coaches *for pay,* (other than baggage,) then, as to *such* goods, they were common carriers. This is plain law. Jones on Bailments, in his appendix says, in relation to stage proprietors, "if they *commonly* carry goods for pay, they are common carriers," page 3. Again, on page 5, he says: "The *practice* of carrying for hire, parcels not belonging to passengers, constitutes the coach proprietors, common carriers." Story on Bail. 325, § 500, on the

Powell et al. *v.* Mills.

same subject, uses the word "*generally* for hire." A charge, stating this to be the law, was also asked by defendant below.

The court then charged, that if the jury found the defendants were common carriers, they were, as such, liable for all damage sustained by the plaintiff, unless it happen by the *act of* God, *or the enemies of the country*. This is also clear law. Common carriers are *insurers*. The court will find the very *language* of the charge in Story on Bail. §§ 489, 492, 510. Appendix to Jones on Bail. 17, 18.

The court further charged for plaintiff, that in *this* case the law in reference to the liability of the defendants, for a *passenger's baggage* had no application. This was correct. *The plaintiff was not a passenger on the stage at all.*

The 4th and 5th charges of the defendants below, were refused.

The 4th charge relates *exclusively* to a *passenger* and *his baggage*. It was altogether *abstract:* the case before the jury having nothing to do with any fact, to which *such* a charge could be applicable. Neither did it propound the law *correctly,* even if applicable. "*Costly silks,*" and dress goods generally, are *strictly* the baggage of a lady.

The 5th charge asked the court to say, that "*notice*" should have been given by plaintiff, at the time of the contract, for the transportation of the trunks, *that it contained costly silk dresses.* This is *not* the law. "A person delivering the goods, is *not* required to give notice of their *quality* or value. If the carrier desires to know, *he* must ask." Appendix to Jones on Bail. 13; Story on Bail. § 567.

The exclusion of *Plumb,* as a witness for the stage owners, was correct. *Plumb was their driver and agent, when the coach upset. He* was responsible over to *them* for such damage as they suffered. Appendix to Jones on Bail. 104.

The *release* tendered by Mr. Dowd, was not sufficient. He admitted he had *no* authority to make the release, except his retainer as a counsel to defend the suit. The power of an attorney don't go to that extent. 1 Greenl. Ev. § 427. Again, a release must be *under seal:* an authority to execute such an instrument, must also be under seal. Again, the testimony of Plumb, going only

to the point of *negligence*, if the law was correctly charged, could not have affected the verdict.     The damage was not occasioned by the *act of God*, or the enemies of the country.

*Locke E. Houston*, on the same side, filed an elaborate brief.

FISHER, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Monroe county.

The defendants below received on their stage-coach, at Tuscumbia, two trunks, containing valuable goods, to be delivered to the plaintiffs, at the town of Aberdeen, for which the defendants received wages, according to their customary rates of charging. The goods, while on the coach, were damaged, so that they became worthless to the plaintiffs.

It appears, while crossing a certain ferry, the horses becoming frightened, ran with the coach out of the boat into the river, when the goods, consisting of valuable silks, received the injury complained of.

It is not pretended that the defendants' agent, who was at the time conveying the goods, is chargeable with the slightest negligence, or that he did not observe such caution as a prudent man would have observed at the time, in transporting his own property. The only question for consideration, therefore, is, whether the plaintiffs are to be held liable, upon the same rules which apply in like cases to common carriers, who are not only bound to take extraordinary care of the goods committed to them, but are treated as insurers against all damages, except such as arise from the act of God, or the public enemy. *Primâ facie*, the proprietors of a stage-coach, used for carrying the mail, passengers and their baggage, are not to be considered common carriers, as to articles not strictly within their line of business, in the technical sense of that term.     They may, however, make themselves such, either by special contract in a particular case, or by their general course of business.     It is clearly established by the testimony in this case, that the plaintiffs had been constantly in the habit of conveying trunks containing goods, and other small packages, from one point

to another, and receiving pay for the same. They are, indeed, brought fully within the operation of the above rule, by the evidence. *Dwight* v. *Brewster*, 1 Pick. 53. )

Judgment affirmed.