POMEROY v. DONALDSON.

SEPT. TERM,
1837.

Pomeroy
v.
Donaldson.

1. In an action against a ferryman, for damages, &c., defendant pleaded, that his fees were not tendered, and that plaintiff entered his boat without his assent. Held, to be double, and amounting to the general issue—and therefore bad.
2. A ferryman is a *common carrier*, and liable not only for gross negligence, but for all losses, except such as are occasioned by the act of the person employing him, the act of God, or the enemies of the country.

APPEAL from the circuit court of Ray county.

*Wilson*, for appellant.

*Burden* and *Burch*, for appellee.

TOMPKINS, Judge, delivered the opinion of the court.

Donaldson brought his action against Pomeroy in the circut court, where he had judgment; to reverse that judgment this appeal is presented.

It appeared in evidence that Pomeroy, the defendant below, appellant here, kept a ferry across the Missouri river; that the appellee, plaintiff below, applied to cross the river; the boat was brought up to the bank, and fastened by a chain to a stake driven into the bank, and the driver of the wagon was directed to drive into the boat. The horses entered and drew in the fore wheels of the wagon; but that when the hind wheels struck the boat the stake was broken, and the boat receded from the shore, the hind wheels of the wagon being out over the end of the boat. The driver being urged thereto, by several persons on the shore, dismounted, and cut his fore horses loose from the wagon, and backed the wagon out of the boat into the river. One of the hind horses was drowned, and the other escaped. The steersman of the boat, examined as a witness, testified that the same stake had been used for that purpose for several weeks, and that other wagons as heavy as that of the plaintiff had been taken safely into the boat, and believes that by skilful driving the wagon might have been taken safely into the boat. He charged the negligence to be in driving too fast. It was in evidence that the wagoner stopped just before entering the boat for the wagon wheel to be unlocked, and that the horses then entered the boat in a brisk walk. The defendant pleaded two pleas: 1. Not guilty. 2. He kept a ferry for hire, &c., and that the plaintiff entered his boat without leave, and before paying fees, and that he did not assent to his

entering. To this last plea a special demurrer was filed, assigning for cause that it was double, in stating that the plaintiff did not tender the ferriage money, and that the plaintiff attempted to drive into the boat without his consent; and thirdly, that this plea amounted to the general issue, and was therefore bad. The plea clearly amounts to the general issue. For if the plaintiff attempted to drive into the boat against the will of the ferryman, there could be no contract implied on his part to carry the plaintiff across; and consequently he might have introduced the same evidence under the plea of not guilty. Several very long instructions were given to the jury at the instance of the plaintiff; all of which amounted to this, that if the defendant directed the plaintiff to drive into the boat, and he did so, the defendant not demanding his fees, that this amounted to a contract to carry him across the river. 2. That the defendant was answerable for the acts and negligence of his agents employed at the ferry in taking passengers across. 3. That a ferryman was bound to use the strictest diligence, and like a common carrier, was liable for all accidents, except such as were the act of God, or the enemies of the State. 4. If the jury believed that the defendant landed the boat at the usual place for the entrance of wagons and teams into the ferry-boat, and then directed the wagoner to drive in; and if they believed that in driving into the boat in the way usual on such occasions the damage happened to the plaintiff by the breaking of the boat loose from the bank, then the defendant is liable therefor. To all these instructions the defendant excepted. The court, on motion of the defendant, instructed the jury, that if they found that plaintiff's property was put in danger by the negligence or unskilfulness of himself or agent in driving the wagon into the boat, then they must find for the defendant. 2. The court instructed the jury also, on motion of the defendant, that the plaintiff was bound to pay his fees, if demanded, before the defendant was bound to cross him. As no evidence of a demand was offered, it is rather strange that such a question should be asked. The court refused to instruct the jury that the ferryman, defendant here, was only liable for gross negligence, and also to give several instructions growing out of that principle, and in place of such instructions, gave this: That if the ferryman directed the plaintiff to drive his wagon into the boat, that before doing so it was his duty to have secured the boat to the bank, and if from driving the

wagon and team into the boat in the usual manner, the boat broke loose for want of sufficient fastening to the bank, and occasioned the damage complained of, it is negligence in the ferryman; and if through such negligence the plaintiff's property was placed in a perilous situation, and that it was therefore prudent for the plaintiff to make use of exertions to extricate his property, and that a loss or damage was the ultimate result, that the defendant is liable therefor. It is assigned for error, 1. That the demurrer to the second plea was overruled. 2. That the court erred in giving the instructions asked for by the plaintiff. 3. The court erred in refusing to tell the jury that if the loss was occasioned by the negligence of the plaintiff, the plaintiff in such case could not recover. 4. The court ought to have told the jury the defendant was liable only for gross negligence. 5. The court committed error in refusing a new trial.

In an action against a ferryman, for damages, &c. def. pleaded, that his fees were not tendered, and that plaintiff entered his boat without his assent. Held, to be double, and amounting to the general issue—and therefore bad.

1. The demurrer to the second plea appears to have been very well sustained; to say the least, every thing there pleaded might have been given in evidence under the general issue; but it was double in making two defences, viz: that his fees were not tendered, and that he did not assent to receive the wagon.

2. The result of all the instructions asked by the plaintiff, and given by the court is this, that the defendant was bound to use the strictest diligence, and was liable for all the damages sustained by the plaintiff in consequence of the defendant's negligence; which appears to me to be very correct instruction.

3. The court instructed the jury, that if they found that the property of the plaintiff was brought into danger by the negligence or unskilfulness of the driver of the wagon in entering the boat, they must find for the defendant. No evidence was given, on which such instruction as is complained of in this third assignment of errors, after the wagon and team entered, the boat and the instruction, as it appears to me, could not properly have been given in the broad manner here stated. But the defendant asked so many instructions, most of which amounted to nearly the same thing, and varied more in words than in substance, that it is not strange he should commit an error in attempting to reduce them to a few points.

A ferryman is a *common carrier*, and liable, not only for gross negligence, but

4. The circuit court clearly did not commit any error in refusing to tell the jury that the defendant was liable only for gross negligence. The giving of such an instruction as is here asked for would be very extraordina-

ry. A man who hires his neighbor's horse, to be used for a day, or longer time, although he pays his money for such use, is bound to use strict diligence that the horse may receive no injury: while it is contended that a ferryman who is permitted by the law of the land to have the profits of transporting persons and property across a large navigable river, with the implied agreement that no competition shall divide the business with him, until his custom increases so much that he can no longer transport them without detaining them too long on the bank, it is contended should be liable only for gross negligence. A government that would permit such a law to remain in force, would be very careless of the lives and property of its citizens.

*for all losses, except such as are occasioned by the act of the person employing him, the act of God, or the enemies of the country.*

5. The court erred in refusing a new trial. All the instructions given by the court seem to have been very properly given. The liability of ferrymen was well defined; and the jury were carefully instructed that, notwithstanding this liability of the ferryman, if the plaintiff, by the negligence or unskilfulness of his driver, occasioned the accident to happen to the boat, they must still find for the defendant. The weight of evidence too, it appears to me, strongly inclined in favor of the plaintiff. The strongest circumstance in the defendant's favor is, that it appears from the testimony of witnesses that he might still have taken the wagon over safely with the two hind wheels over the end of the boat and in the water. But the jury found that by his own negligence, he had caused this accident to happen, and thereby produced the state of alarm in which the plaintiff, imprudently perhaps, backed his wagon into the river. Neither the plaintiff, nor his agent, the driver of his wagon, could be supposed to have the same presence of mind on such an occasion as the ferryman; the act done by him was what would most probably be done by every common man on such an occasion; and that act being the consequence, as the jury found, of the defendant's own negligence in not securing his boat to the bank, all the loss that ensued from it ought to be visited on the defendant. The court then, in my opinion, committed no error in refusing a new trial. Being then of opinion that none of the instructions refused ought to have been given, and that none given ought to have been refused, the judgment of the circuit court ought, in my opinion, to be affirmed; and the rest of the Judges concurring in this opinion, it is affirmed.