JACOB ALBRIGHT V. GREENVILLE W. PENN.

The admission of irrelevant testimony is no ground for reversing a judgment, where it appears from the statement of facts, that the jury could not have been misled thereby.

The rule as to the effect of mutual negligence in cases of accidental injury, has no application to a loss sustained in attempting to cross a ferry, for which the ferryman, as a common carrier, is ordinarily liable.

It seems that where the Court has fully and fairly given in charge to the jury the law applicable to the whole case, it is not error to refuse additional charges asked by the parties.

See this case as to the liability of common carriers, and particularly as to the difference between the liability of carriers of property and carriers of passengers.

Error from Houston. The defendant's ferryman testified, "that after he had fastened the boat for the last wagon, the "plaintiff said the boat was not fastened right; that it ought "to be swung more loose, the driver, Atkinson, saying also, "that he knew the duties of a ferryman, and that it should "swing loose; that he, the witness, stated that such was not "his custom, but if they wanted it that way, they could fix it "as they pleased; and that the driver (Atkinson) then, at the "request of the plaintiff, unloosened the boat and lengthened "the chain, so as to make it hang more loose." This testimony was directly contradicted by Atkinson, and another witness who was present at the time.

*Yoakum & Taylor*, for plaintiff in error. The plaintiff in error relies principally upon two points for a reversal.

1st. The Court permitted the plaintiff to offer evidence of the bad condition of the river bank, at the ferry, when no such charge was made in the petition.

2d. The second point was the refusal to give the first charge asked by defendant.

As to the first point. The defendant comes prepared to defend only what is alleged against him, and of which he has notice by the petition. This Court has said that the evidence must be confined to the issues in the pleadings. (Guess v. Lubbock, 5 Tex. R. 535 ; Wells v. Fairbanks, Id. 582 ; Keeble v. Black, 4 Id. 71.) He was then surprised by this evidence, which formed a large item in the aggregate of damages.

As to the second point. Greenleaf says, "If the injury is "caused partly by the negligence of the plaintiff, and partly "by that of the defendant or of some other person, it seems that "the plaintiff cannot maintain the action." (2 Greenlf. on Ev. Sec. 220 ; Williams v. Holland, 6 Car. & Payne, 23 ; Pluckwell v. Wilson, 5 Id. 375.)

*G. F. Moore*, for defendant in error. I. It is submitted that whether the testimony was legitimate or not, in other respects, it was certainly proper to enable the jury to determine whether the loss was occasioned by reason of the insufficient strength of the chain and staple, in reference to the condition of the banks, or because, as alleged in defence, the boat's being fastened "contrary to the principles of hydrostatics." But from the statement of facts, it is so very apparent that if there was error in admitting this testimony, it did not affect the final result, and it being now a settled question in this Court, that a judgment will not be reversed for errors on an immaterial point, I deem it unnecessary to say more on this question.

II. A reversal is asked because the Court refused to give the first charge asked by plaintiff. It may be replied also to this assignment, that the charge asked was abstract and immaterial to the issue made by the pleadings and facts in this cause; because the only act of the defendant, that was set up by plaintiff as a matter of defence, was the manner in which it was alleged that the boat had been fastened by direction of defendant ; and this was surely not intended to be referred to as an act of negligence, because certainly it was set up in defence as an act knowingly and wilfully instead of negligently done by

defendant. And this is made still more manifest from the fact that the plaintiff in third charge asked, requests the Court to charge that this alleged improper act of the defendant, precluded his recovery ; the action upon which is not now urged as error; and even if the first charge asked had reference to the same matter, this would be sufficient reason for a refusal, as the law upon this alleged defence was given by the Court in charges six, seven and eight, as given by the Court, (record, p. 13 and 14) and the charge asked by plaintiff and given, (record p. 17,) fully and formally, if not more so, than he was entitled to have asked it. (12 U. S. Dig. p. 77, Sec. 77 ; Fisher v. Clisber, Id. 344 ; 1 U. S. Dig. p. 374, Sec. 152 ; Cohen v. Hune, 1 McCord, 444 ; 1 Nott & McCord, 19 n ; Miles v. James, 1 McCord, 157 ; Rutherford v. McGovern, 2 N. & M. 17.)

But the law here asked to be given to the jury, is not applicable to the case at bar, as will be seen by reference to the cases referred to to support the text in Greenleaf, and which are quoted in plaintiff's brief. But even if this doctrine were applicable to cases against carriers, the failure of plaintiff to qualify the charge asked, as is done in the Sec. of Greenleaf, referred to, " that the plaintiff cannot maintain the action unless " perhaps in cases where the plaintiff, by ordinary care, could " not have avoided the consequence of defendant's negligence," was sufficient cause for its refusal, and to this extent the law had been substantially (though, as I think, improperly) charged.

The loss was evidently occasioned by the gross negligence of the plaintiff, in using a boat-hook so badly cracked (and that when it could have been easily discovered by ordinary diligence) that it was held together only by the thickness of a thick knife-blade.

HEMPHILL, CH. J. This action was brought by Greenville W. Penn against Jacob Albright (who kept a ferry on the Trinity river,) to recover the damages sustained by reason of the failure of said Albright to safely ferry the wagon and team of the plaintiff across the said river.

The plaintiff alleged that, owing to inattention and gross negligence of the said Albright and his ferryman, in fastening his boat, after the team and fore wheels had entered the boat, when the hind wheels struck said boat, the chain which fastened the same to the bank, being cracked and of not sufficient strength for that purpose, broke, and the boat sunk, sinking with it petitioner's team, wagon and its load, in water about fifteen feet deep.

The defence was, general demurrer, general denial, and that the injury sustained by plaintiff was produced by his own conduct, in ordering the ferryman to hang the boat loose, so as to permit it to sink into the water when the wheels of the wagon should come on the boat; that said order given by plaintiff was contrary to the usages of the ferryman, against his protestations, and in violation of hydrostatic principles.

The jury found for the plaintiff the sum of three hundred and ninety-five dollars.   The defendant having brought the cause up, assigned several errors, but in argument insisted only on two points, viz:

1st.   That the Court permitted the plaintiff to offer evidence of the bad condition of the banks at the ferry, when no such charge was made in the petition.

2d.   That the Court erred in refusing to give the first charge asked by defendant.

We will examine but very briefly the first alleged error, viz: that of receiving evidence of the bad condition of the river banks at the ferry.   The defendant in error contends that this was proper in order to enable the jury to determine whether the loss was occasioned by the insufficient strength of the chain and staple in reference to the condition of the banks, or, as alleged in the defence, with reference to the boat's being fastened "contrary to the principles of hydrostatics."

This is quite a plausible ground on which to support the admission of such evidence.   But from the statement of facts, and the conclusive grounds therein shown (independent of the condition of the banks) for the verdict, it will be seen that the evi-

dence in relation to the banks was wholly immaterial, and might have been considered by the jury, or rejected by them, without in any way affecting or modifying their verdict.

Whether the banks were good or bad was a matter of no moment, under the facts of the case. Their condition might have been of some consequence, had the plaintiff been unable on that account to drive his wagon safely to the drop or slip of the flat ; but having reached that, the condition of the banks became immaterial, in considering the question of compensation for the actual loss, and there can be no pretence that the jury allowed for anything more than the actual damage, and their allowance for that appears, under the facts, to be quite moderate.

There is nothing, then, in the first ground, and we will pass to the second, viz :

That the Court erred in refusing to give the first charge asked by defendant.

This charge is expressed as follows, viz : If the jury find, from the evidence, that both the plaintiff and defendant acted negligently, the plaintiff cannot recover.

In support of this point, the plaintiff in error refers to a passage in 2 Greenleaf on Evidence, Sec. 220, to the effect that " if the injury is caused partly by the negligence of the plaintiff "and partly by that of the defendant, or some other person, it "seems that the plaintiff cannot maintain the action." In the last edition of this work, there is the following qualification, viz : " unless, perhaps, in a case where by ordinary care he "could not have avoided the consequence of the defendant's "negligence." The author refers to Williams v. Holland, 6 C. & P. 23 ; Pluckwell v. Wilson, 5 C. & P. 375 ; Hawkins v. Cooper, 8 C. & P. 473 ; Davis v. Mann, 10 M. & W. 546 ; Smith v. Smith, 2 Pick. 621 ; White v. Wimmiset Co. 5 Monthly Law Rep. 203. I have examined all these cases, with the exception of the last, and not one has any reference to the liabilities or negligence of a common carrier, or of the person whose goods are entrusted to him. The first, viz : Williams

v. Holland, 6 Carr & Payne, 23, 25 Eng. Com. Law Rep. 302, was a case for driving a chaise against plaintiff's cart. Pluck-well v. Wilson, 5 Carr & P. 375, 24 Eng. Com. Law Rep. 612, was an action for an injury done to plaintiff's chaise by the carriage of defendant. Hawkins v. Cooper, 8 C. & Payne, 473, 34 Eng. Com. Law R. 485, was an action to recover damages for an injury to a person crossing a highway, by driving against and knocking him down. Davis v. Mann, 10 M. & W. 546, was where the defendant had negligently driven his horses and wagon against and killed an ass which had been left in the highway, fettered in his fore feet, and thus unable to get out of the way of the defendant's wagon, which was going at a smart-ish pace along the road ; held : that, though it was an illegal act on the part of the plaintiff so to put the animal on the highway, yet he was entitled to recover. The principle in the case of Smith v. Smith, 2 Pick. 621, is, that one who is injured by an obstruction unlawfully in the highway, cannot maintain an action for damages, if it appears that he did not use ordinary care by which the obstruction might have been avoided.

It is not very easy to perceive how the principles of these cases can be applied to sustain an exception to the liability of a common carrier ; and especially how they can be applied under the facts of this case. Was there any negligence on the part of the plaintiff in this case? None was alleged or proven. There was an averment in the answer, that he had interfered with the ferryman, and had caused the boat to be fastened so as to endanger the breaking of the chain, and contrary to the principles of hydrostatics. But the weight of the evidence was against the truth of these allegations, and that in fact the plaintiff had not himself fastened, or directed others as to the mode of fastening the boat.

But there was another reason on which the Court might have very properly refused to give the principles requested in charge to the jury, and that was, that he had already given full instructions, which were, in effect, in favor of the defendant, and in relation to those facts to which the charge asked

must have had reference, if indeed it had reference to any facts in the cause.

The seventh proposition, in the general charge, is to the effect that if plaintiff voluntarily interfered, and gave directions about the management of the ferry-boat, even in that case the defendant would be liable, if the accident happened from a defect in the fastenning or the hook or chain attached to the boat, and if the defendant was following plaintiff's directions, this fact would only go in mitigation of damages.

The eighth proposition was still more favorable to the defendant, for by that the jury were charged that if the plaintiff interfered in the management of the boat, in receiving the property to be taken across the river, and prescribed a different mode from that adopted by the ferryman, and the loss was incurred solely in consequence of such change, and not from any defect in the chain-hook or staple of the boat, or by fault of the ferryman, and the ferryman was acting in consequence of such directions from plaintiff, in such case, if there is proof of such facts, the ferryman would not be responsible for such loss.

Whether these instructions be strictly in conformity with law or not, need not be discussed. One thing is certain, they leave the defendant without any ground of complaint. They are much more favorable to him, than the facts of the case would allow. If there were any misconduct, improper directions, or as the defendant calls it, negligence on the part of the plaintiff, the jury were instructed to give the defendant the full benefit of such default.

But if it had been proven beyond all question, and without contradiction, that the plaintiff had interfered, and that the boat had been fastened in conformity with his instructions, yet this under the facts of the case, would not have relieved the defendant from liability, or diminished it in the slightest degree. The proof is conclusive, that the loss was attributable solely to the defect in the hook or staple. This had been cracked previous to breaking, and the piece that held it together was only about the thickness of a thick knife-blade, and consequently altogether

insufficient to resist the pressure from the superincumbent weight of a heavy wagon.

There was no error, then, in the refusal of the Court to give the charge as asked by the defendant. And in fact, if it had been given, it could not have varied the result, for, on the facts, the sinking of the boat was not attributable to any fault in the plaintiff, but to the defective fastenings or chain of the defendant, and the verdict must have been found accordingly.

The plaintiff has not, on his part, appealed in this case, but I deem it proper to notice one proposition in the general charge to the jury, which was unfavorable to the plaintiff, but was excepted to and assigned for error by defendant, although it has not been insisted upon in argument, to the effect that any defect in the chain or fastening of the boat, although it was out of sight and latent, provided it could have been discovered by a minute examination, would not discharge the ferryman, in case of loss, from liability. He could be discharged only in case the accident arose from such hidden and internal defect, which a careful and thorough examination would not disclose, and which could not be guarded against by the most vigilant foresight. And to this effect was an instruction given at the request of the defendant, viz : if there was an internal defect in the forging of the hook, undiscoverable by the closest inspection, and unavoidable by human care, skill and foresight, the ferryman would not be liable for a loss occurring from such defect.

Had the defect in the hook, in this case, been hidden and undiscoverable, and there is no proof that it was (on the contrary, the presumption is that it was visible, and might have been detected on inspection ;) yet the defendant, as a carrier of goods, would not have been exempted from responsibility, and the instructions to that effect are manifestly against the law.

A ferryman is a common carrier, and as such, is liable for all losses not occasioned by the act of God or the public enemy, and not originating in the fraud of the plaintiff himself in relation to the goods, or not arising from the negligence of the

plaintiff in regard to their packing or delivering, or from internal defect, without the fault of the carrier. Some of these exceptions are scarcely applicable to ferrymen, not being likely to arise in the transportation of goods across a river ; but if all could be made available on some contingency or other, yet they do not reach such defence as would be allowed by the instructions. They do not embrace or extend any relief to the carrier, on account of defects in his boat, its chains, ropes and fastenings, however hidden or impenetrable they may be to human vision. The ferryman, as a carrier of goods, is liable not only for losses occurring from his own negligence, but for all losses not attributable to supernatural agency, to a public enemy, or to the fault of the party who complains. " No force however great, no accident however inevitable, no fraud however beyond his control, will excuse him." He is insurer against all losses except those specified, and although he may exercise the utmost vigilance, he is nevertheless liable for actual losses. (2 Tex. R. 124.)

The above instructions, as to the effect of latent defects, are based not on the principles of law by which the liabilities of ferrymen, as carriers of goods, are affected, but on those which regulate the responsibilities of carriers of passengers. There is a well established distinction between the liabilities of the carriers of passengers and the carriers of goods. The former are not liable for injuries to passengers, which could not be guarded against by human care and foresight. The latter are insurers, and the fact that a loss could not have been avoided by any human vigilance, will be to them no protection.

The subject of the liabilities of carriers of passengers is very fully discussed in Ingalls v. Bills and others, 9 Metcalf, 1, where the injury arose from the breaking of one of the iron axeltrees, in which there was a small flaw entirely surrounded by sound iron one-fourth of an inch thick, and which could not be discovered by the most careful examination externally. It was held that the proprietors of the coach were not liable, under the circumstances, for the injury, though they would have been

liable, had the defect been such as might have been discovered by the most careful and thorough examination. The distinction between the responsibilities of the carriers of passengers and those of goods was recognized in that case, and the latter were said to be responsible for the safe delivery of goods, with but two exceptions, viz : the act of God and the King's enemies.

We can perceive no ground upon which the judgment should be reversed. We may regret the inconvenience which may be felt by the defendant, in satisfying this judgment; but he cannot charge the law with injustice in compelling him to remunerate the plaintiff for losses occasioned by his negligence in not having a boat with fastenings safe for the purposes of ferriage. He has chosen the employment of a common carrier, and he must abide its consequences and responsibilities.

Judgment affirmed.