JOHN R. POWELL et al. *v.* JOHN F. MILLS et al.

1. BAILMENT: COMMON CARRIERS: FERRYMEN: LIABILITY OF.—The keeper of a public ferry is a common carrier, and is liable as an insurer of the property committed to his charge for transportation, against all loss or damage, except such as may result from the act of God or the public enemy, or from the act of the owner, or his agent or servant.

2. SAME: SAME.—After property has been received into a ferry boat for transportation, it is *prima facie* in charge of the ferryman as a common carrier, and the responsibility of the ferryman is not diminished by the fact that the property is accompanied by the owner, unless it affirmatively appear that the owner did not trust the care of the property to the ferryman, but retained the exclusive management and control of it himself.

3. SAME: SAME.—A ferryman is bound to make such provision for the safe transportation of property received by him on his boat, as from the nature of the property is requisite and necessary, and he cannot devolve any portion of this duty on the owner without his consent.

4. SAME: SAME: CASE IN JUDGMENT.—The defendant was the keeper of a public ferry, and had agreed with the plaintiff for hire, to transport his stage-coach and horses across the river, without making any change in his common law liability as a common carrier. The plaintiff's coach and horses were driven into the ferry-boat by their driver, who thereupon vacated his seat, hitched the lines, and went to the front of the horses, and commenced giving them water dipped from the river in a bucket. Whilst thus engaged, one of the horses became restive, and soon afterwards, and before the boat reached the landing, the team ran out of the boat into the river, the driver being carried with them in his efforts to stop them. *Held*, That the coach and horses were in the possession and custody of the ferryman, and not of the driver; and that the defendants were responsible for the damages thus sustained by plaintiffs.

5. SAME: SAME: LIABILITY WHEN GOODS ARE INHERENTLY SUBJECT TO DECAY, ETC.
—A common carrier is not responsible for damages resulting to the goods in
consequence of a natural and inherent infirmity in them, and without fault on
his part; but this principle is applicable alone to cases where the property
damaged is from its nature liable, without fault on the part of the carrier, to
rapid decay, as fruits and vegetables, or subject to diminution or destruction,
as by evaporation, leakage, or spontaneous combustion, or where goods are
damaged in consequence of being improperly packed by the owner.

6. INSTRUCTIONS: ERROR TO GIVE IRRELEVANT.—It is error to give an instruction
of the jury, which though correct as an abstract proposition of law, is inappli-
cable to the evidence.

ERROR to the Circuit Court of Monroe county.   Hon. W. L.
Harris, judge.

A full statement of the case will be found in the opinion of the
court.

*W. F. Dowd*, for plaintiff in error.

1. The plaintiffs, as common carriers, while in possession of the goods
as such, being insurers of the safe delivery at the place of destina-
tion, against all accidents, except the act of God and the enemies
of the country, are entitled to maintain this action, more especially
when the record shows that the plaintiffs have been compelled by
the courts of the country, to pay for the goods, as common carriers,
without any fault upon their part.

This position was not seriously questioned in the court below,
and will not be before this tribunal.   It is sustained by the follow-
ing elementary writers.   2 Blackstone, 371; 1 Bacon's Abridg-
ment, 7, C.; 1 Chitty's Pleading, 7; 2 Saunder's R. 47, C. D.;
Story on Bailments, §§ 93, 94.   And in the following reported
cases: *Croft et al.* v. *Alison*, 4 Barnwell & Alderson, 614 (6 Eng.
Com. L. R.); *Martin* v. *Coles et al.* 1 Maule & Selwyn, 147;
*Woodruff* v. *Halsey et al.* 8 Pickering, 333; *Bigelow* v. *Heaton*,
6 Hill, 43; *Cox* v. *Easley*, 11 Ala. 362.

2. The defendants, as owners of a public ferry, were common
carriers.   Story on Bailments, § 496; 2 Kent, 467; *Babcock &
Been* v. *Herbert*, 3 Ala. R. 392.

3. The carrier's liability, in this instance, is not restricted by the
terms of the contract.   He is, therefore, not in the position of a

canalboatman or a steamboatman, who has given a bill of lading, restricting the liability by the words, " dangers of the river excepted."

The liability of defendants is defined by this court in the case of *Powell & Co.* v. *Mills*, 1 George's Miss. R., as follows: They are not only bound to take extraordinary care of the goods committed to them, but are treated as insurers against all damages, except such as arise from the act of God or the public enemy.

They are liable for all possible losses,—for all which human power could have prevented. It is not a question of negligence, or care and attention. Story on Bailments, §§ 409, 410; *Camden and Amboy Railroad Company* v. *Burke*, 13 Wend. 626; *Gilmore et al.* v. *Carman*, 1 S. & M. 302; *Turney* v. *Wilson*, 7 Yerger, 340.

It is conceded that the immersion of the stage and its contents into the water was an accident, and not the result of carelessness on the part of the driver. The defendants are, therefore, liable.

4. The plaintiffs employed the driver to take care of the horses on land, and to drive the coach. They employed the defendants as ferrymen, to take charge of the stage and horses at the bank of the river. The power and duties of the driver then ceased; the liability of the defendants commenced. The property was in their possession when placed on the boat. Although the driver had cut loose the horses and backed the stage into the river, under the influence of alarm, the defendants would still have been liable, as decided by the Supreme Court of Missouri, in an able opinion delivered in the case of *Pomroy* v. *Donaldson*, 5 Missouri R. 36.

It was the duty of the defendants to provide a boat to carry the horses and stage safely over, and, if necessary, to provide a sufficient number of hands to prevent the escape of the team. *Miles* v. *James*, 1 McCord So. Car. R. 457; *Cohen* v. *Hume*, Ib. 439; Story on Bailments, § 509; 13 Wend. 611. In short, the possession of the stage, and its contents, and the horses, was with the defendants when they were driven into the boat; they were alone responsible, had the entire and exclusive management and control. The driver was not bound to control the horses farther, although in this instance he took all reasonable care of them, was standing before them, and was borne out in the river by them. This acci-

dent will not release the defendants from liability. Story on Bailments, §§ 574, 582; 4 Stewart & Porter Ala. R. 382.

The jury, therefore, found contrary to the law and the facts, and a new trial should have been granted.

5. The Circuit Court erred in giving the several charges asked by the defendants, because they are not true as abstract propositions of law, and are especially exceptionable, because they have no application to the case as made by the testimony, and did egregiously deceive and mislead the jury.

The first charge is only applicable to the carriage of fruits and other articles necessarily and inherently destructible in a given time. 3 Kent, 299, 300, 301. And when by a storm on the river the fastenings of horses on a boat were broken, they mingled together, and some of them were injured, it was decided the carriers were not liable, because occasioned by the act of God. Story on Bailments, § 492.

But a common carrier is liable for the transportation of animals of the brute creation, delivered to him for that purpose. Thus, when a dog was delivered to a common carrier, and escaped by slipping the noose, it was not like the case of goods imperfectly packed, or destructible in their nature ; but the carrier could have secured the dog so he could not escape, was bound for every possible danger, and, therefore, liable. *Stewart* v. *Crawley*, 2 Starkie (E. Com. L. R.), 323.

If a horse escapes from his fastenings on board a steamboat, the owners of the boat are responsible. I think this well-considered case settles the question. *Porterfield* v. *Brooks*, 8 Humphrey Tenn. R. 497.

In ascertaining the liability of common carriers, it is difficult, nay often impossible, to prove that there was negligence. Courts will not institute the inquiry, although the accident be unusual and unlooked for, but will hold him responsible. *Rutherford* v. *McGowen*, 1 Nott & McCord, S. C. R. 17.

The charges were all inapplicable, and did mislead the jury.

Not a syllable of proof was adduced that there were any vicious propensities in the horses, or that they were wilder than horses usually are on entering a ferry-boat. On the contrary, Lemon, the

witness of defendants, proves they were not. There was no proof of fault or negligence on the part of plaintiffs, who were not present, or the driver who watered his team, and was standing at their heads when they became frightened.

There was no proof that the plaintiffs had no intention of trusting the defendants with their goods, or that the stage and horses were exclusively managed and controlled by the driver. The charge is a palpable violation of law, because all precedent and authority show that when the coach was in the boat, it was in possession of the ferryman.

*Sale* and *Phelan*, for defendants in error.

No memorandum of the argument of Messrs. Sale and Phelan has come to my possession. .

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiffs in error against the defendants, as ferrymen, to recover for the damage done to certain goods in the care of the plaintiffs, as proprietors of a line of stage-coaches, for transportation, by the stage-coach being thrown from the defendants' ferry-boat, in consequence of which the goods were wet and became damaged.

The facts, as set forth in the bill of exceptions, are, in substance, that the defendants were in the habit of taking the stage-coaches of the plaintiffs across their ferry for hire, and on the occasion when the damage complained of was done, that the plaintiffs' driver drove the coach and horses into the ferry-boat, and then got off his seat, after he had tied up the lines, taking his bucket to water the horses. Whilst the ferryman was proceeding to take the boat across the river, he saw the driver standing before the front horses watering them, and observed one of the wheel-horses to be restive, and heard the driver speak to him to quiet him. No one was holding the horses when they started out of the boat, but the driver was watering those in front; and presently they started to run out of the boat before it reached the landing, and the coach was thrown into the river. After the driver left his seat, he had not hold of the horses or of the lines, until the horses ran out. The ferryman was

talking to the driver whilst he was watering the horses, and it does not appear that he made any effort to quiet them, or to prevent injury being done by them, but the driver was carried into the river, as if taken by the horses in his efforts to stop them. The ferry was a public one, kept by the defendants, who received compensation by contract with the plaintiffs for transporting their stage-coaches and horses, and it is admitted that the goods in the plaintiffs' stage-coach were injured by their submersion, in consequence of which they were sued, and damages recovered against them by the owners of the goods.

A verdict was rendered for the defendants; and thereupon the plaintiffs moved for a new trial: 1st. Because the verdict was contrary to law and the evidence; and 2d. Because erroneous instructions were given by the court for the defendant. To the overruling of that motion, the plaintiff excepted, and brings the case here.

The first error assigned is the refusal of the court to grant a new trial, on the ground that the verdict was contrary to law and the evidence.

At the instance of the plaintiffs, the court had instructed the jury on the trial, that the defendants, as ferrymen, were common carriers, and liable as insurers of the property committed to their charge, and for all accidents, except such as arise from the act of God or the public enemies, or by the act of the plaintiffs or their servant; and further, that when the stage-coach was driven into the ferryboat, it was in the defendants' possession, and they became liable for all accidents except as just stated; and that the fact that the plaintiffs' servant drove the coach and horses into the boat did not exempt the defendants from liability.

These principles are well-settled rules of law, which have been recognized by the court. In *Gilmore et al.* v. *Carman*, 1 S. & M. 279, it is said that the carriers " are insurers against all losses occasioned by accidents not within the exceptions of law;" that is, which have not occurred by inevitable accident resulting from the act of God, or which have not been occasioned by public enemies of the country, " or which are not excepted by special contract." And the criterion by which to test whether the accident be inevitable or not, is held to be that it must be such an accident as no human foresight or sagacity could have prevented, in order to con-

stitute an excuse.   These rules have been settled law at least since the case of *Coggs* v. *Bernard*, 2 Lord Raymond, 909.   And it is accordingly held in *Richards* v. *Fuqua*, 28 Miss. R. 792, that the carrier is bound to make all provisions which, under the circumstances and situation of the ferry, was necessary for the safe delivery and passage of such property as was offered at the ferry for transportation ; and if, without fault of the other party, a loss be sustained in such property, either in receiving or transporting it safely, by reason of the insufficiency of the boat or other means, which it was his duty to provide for that purpose, he is responsible for the injury.

It plainly results from these principles, that after the stage-coach and horses were received into the ferry boat, they were in the charge and keeping of the ferryman, and it became his duty to make such provisions as were required, from the nature of the property committed to his charge, to insure its safe transportation.   This, indeed, is the very substance of the obligation incurred by the nature of the business.   The responsibility of safely keeping the property during the passage across the river, and of employing all the means necessary to that end, was transferred from the owner to the carrier by the fact of receiving it into the ferry boat; and it devolved upon the defendants to show that the accident which caused the damage occurred by some of the means above-mentioned as exempting them from liability.

There is no pretence that there was any exception in the contract exempting them from responsibility in such a case; or that the accident was inevitable in the proper legal sense of the term, and could not have been prevented by the construction of barriers around the boat, or by the employment of servants to secure the horses, or by causing them to be loosed from the coach.   It was the duty of the defendants to take these precautions in receiving the property, and becoming bound to transport it safely ; and they are responsible for the damage unless they were relieved of their responsibility by the plaintiffs, or their driver, taking upon themselves to keep the horses safely.   But there is no positive evidence of such an undertaking, nor can it be justly inferred from the conduct of the driver on the occasion.

It appears that the driver drove the horses attached to the stage-coach into the boat ; and after tying the lines, he left the box and proceeded to water the horses. He did not continue to hold the lines, nor say anything showing that he had taken upon himself the safe keeping of the horses. And the only circumstance tending to show that they were in his keeping at the time, is the fact that he was carried into the river by the horses. But this might have been done by efforts to stop them by seizing the bridle, which he would very naturally use, as he was standing before them and watering them when they started off. It is not sufficient to show that he had undertaken to keep them safely, but is more properly to be regarded as an effort to aid the ferryman in performing his duty ; and the fact that he left them and proceeded to get water for them immediately after driving them into the boat, tends much more strongly to prove that they were in the keeping of the ferryman.

There appears, therefore, to be nothing in the circumstances sufficient to exempt the defendants from the responsibility resting upon them from the nature of their undertaking.

The second ground of error insisted on is the instructions given to the jury in behalf of the defendants.

The first of these instructions is, that "if the accident happened in consequence of a natural inherent infirmity in the property itself, after all reasonable care has been taken to prevent it by the carrier, he is excusable."

This rule is applicable to articles liable, from their nature, to rapid decay, as fruits and vegetables, and to goods in their nature subject to diminution or destruction, as the evaporation of liquids, or leakage from casks in which they are put, and destruction by spontaneous combustion, without any fault or improper act on the part of the carrier, and to cases of goods improperly put up by the owner when received by the carrier. Story on Bailments, § 492, a. But it is not applicable to chattels which are not, in their nature, subjects of decay or deterioration, during the continuance of the bailment, as stage-coaches, dry goods, horses, and other beasts ; for such articles come clearly within the obligation of the carrier, which, by proper diligence and care, he may perform so as to deliver them safely at their destination, according to his contract. *Stewart v.*

*Crawley*, 2 Stark. Rep. 323; *Cohen* v. *Hume*, 1 McCord, 439; *Porterfield & Brooks* v. *Humphreys*, 8 Humph. 497.

This instruction was, therefore, improper.

The second instruction is, that "if the accident happened in consequence of the fault or negligence of the plaintiffs, or their driver, the defendants are not responsible."

This appears to imply, that it was necessary for the plaintiffs, or their driver, to do some act towards the safe-keeping of the horses in the ferry-boat. But we have above seen that the entire duty of the care and safe-keeping of the horses devolved upon the defendants upon taking the coach and horses into the boat; and hence the instruction, in this point of view, was erroneous. But if it is regarded as having reference to any act of the plaintiffs, or their servant, interfering with, or preventing, the performance of the duty of the defendants, it is likewise improper; for there is no evidence to which the instruction was properly applicable, in that point of view.

The last instruction is, that the defendants are not liable, if the jury believe that there was no intention to trust them with the property whilst in the boat, and that the plaintiffs were in the habit of placing their own drivers on the boat, by whom the coach and horses were exclusively managed and controlled.

There appears to be no evidence upon which this instruction could be properly based. *Prima facie*, the defendants as carriers were responsible for the safe-keeping of the property intrusted to them; and there is no evidence tending to destroy this presumption, and which would have justified the jury in coming to the conclusion, that the responsibility of the defendants was superseded by the plaintiffs, through their servant taking the exclusive management and control. The instruction was calculated to leave it to the jury to presume, from the mere fact that the driver was the person who had the general control of the coach and horses, and was with them while in the boat, that the plaintiff intended to assume the control of the property, and the responsibility for its safe-keeping, and to relieve the defendants from the same. But this view is unwarrantable under the circumstances; and the facts shown in evidence are entirely consistent with the continuing responsibility of the defen-

dants, under the general rules of law applicable to their situation. In the absence, therefore, of any evidence tending to show that the defendants' responsibility was superseded, it was improper to instruct the jury, as was done in effect by this instruction, that they might conclude that the plaintiffs had assumed the exclusive control of the property, and had relieved the defendants from their legal responsibility.

Under these views of the case, the judgment must be reversed, and the cause remanded for a new trial.

NOTE.—See *Gilmore* v. *Carman*, 1 S. & M. 279; *Neal* v. *Saunderson*, 2 Id. 572; *Whitesides* v. *Thurlkill*, 12 S. & M. 599; *Richards* v. *Fuqua*, 28 Miss. R. 792; *Powell* v. *Mills*, 30 Miss. R. 231; *Heirn* v. *McCaughan*, 32 Id. 17; *N. O. J. & G. N. R. R. Co.* v. *Hurst*, 36 Id. 660.