**BEAN v. HINSON.   (No. 725.)**

(Court of Civil Appeals of Texas. Beaumont. Nov. 25, 1921.)

1. **Appeal and error ⬳731(2)—Assignment of error that conclusion not supported by evidence held too general.**

Under rules Nos. 23–27 for Courts of Civil Appeals (142 S. W. xii), an assignment of error that the court's conclusion of law was contrary to the evidence is too general; for an assignment should state in what respect the evidence does not support the conclusion.

2. **Trial ⬳396(1)—Finding must be supported by pleadings.**

No issue can be decided that is not raised by the pleadings.

3. **Ferries ⬳32—Public ferrymen liable as common carriers.**

Public ferrymen are common carriers, and as such liable as insurers of the property committed to their care, and for all accidents, except such as arise from the act of God, or the public enemy, or by the willful act of the complaining party, and are answerable in damages for any injury or loss resulting from their negligence.

4. **Ferries ⬳32—Ferrymen bound to provide proper facilities.**

Ferrymen are bound to provide proper boats, with competent attendants, and to equip them with all other things necessary and proper for the maintenance of the ferry in an efficient state and safe condition.

5. **Ferries ⬳32—Ferrymen not liable as insurer as to property retained in owner's control.**

Where the owner of property being transported upon a ferry retains control thereof, the ferryman does not assume toward the property the strict responsibility of a common carrier, but his liability therefor in case of loss is governed by the ordinary rules in actions for negligence.

6. **Ferries ⬳32—Failure to provide end gates or chains held proximate cause of drowning of mules.**

In a case where, but for the owner's effort to make his mules pull the hind wheels of his wagon back upon the ferryboat without the ferryboat being fastened to the bank, the wagon would not have dragged the mules into the water and drowned them, but the accident could also have been avoided had the ferryman equipped his boat with end gates, stay chains, bumpers, or other means of preventing animals being transported from backing off the boat, *held*, that the defendant's negligence in operating his boat without such means for preventing accidents was the direct cause of the accident, for which he was liable.

7. **Ferries ⬳32—Custom held not to excuse operation without gates or chains.**

Where mules were lost off of a ferryboat on which they were being transported because of absence of gates or chains thereon, the ferryman was not excused by the fact that it was customary to operate boats on that river without gates or chains; it not being enough that his and other ferries may have carried animals safely without these protective measures.

Appeal from Jasper County Court; Herbert Hargrove, Judge.

Action by J. W. Hinson against I. S. Bean. From judgment for plaintiff, defendant appeals. Affirmed.

C. B. Neel and Roi Blake, both of Jasper, for appellant.

Smith & Lanier, of Jasper, for appellee.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

O'QUINN, J.  J. W. Hinson sued I. S. Bean in the county court of Jasper county, Tex., for the value of two mules which were drowned while being ferried across the Angelina river at Bean's ferry on April 6, 1920. The case was tried before the court without a jury and resulted in a judgment in favor of plaintiff in the sum of $300. Defendant made motion for a new trial, which being overruled, he appeals.

The undisputed evidence shows that on April 6, 1920, defendant Bean was the owner and operator of a ferryboat across the Angelina river for hire; that he had a Mr. Bohler employed as ferryman and that occasionally one Lee Williams who was Bohler's son-in-law assisted in operating said ferryboat but that this was without the knowledge and consent of Bean and in fact over his protest; that on said April 6, 1920 Bohler left the ferry to go to Bean's home, leaving Williams at the ferry, with instructions to ferry Dr. Richardson across, but with no instructions to cross any one else; that while Bohler was gone, plaintiff, Hinson, came, and Williams undertook to cross him and his son and two wagons and two pairs of mules attached to said wagons; that after the wagons and mules were placed on the boat Williams commenced to push the boat from the shore when from some unknown cause the mules to the front wagon backed their wagon, causing the mules to the rear wagon to back the hind wheels of the rear wagon off of the boat into water deep enough to come up nearly to the hub of the wheels; that plaintiff told Williams that he (Hinson) would make the mules pull the wagon back on the boat; that Williams told plaintiff to wait and let him tie the boat to the bank, which he testified he could have done, the boat being only a few feet from the bank, but plaintiff said "No"; that he would make the mules pull the wagon back on the boat; that plaintiff took the lines and tried to make the mules pull the wagon back on the boat, and that the mules did try to pull it back, but failed; that while the mules were pulling they were surging backwards and forwards, and the boat was floating further out into the river, and finally the wagon pulled the mules off of the boat into the river, and they were finally drowned; that the ferryboat did not have any chains, bumpers, end gates, or other obstructions at the end of the boat to prevent animals or vehicles from falling or being thrown into the water; that it was customary for ferryboats on the Angelina and Neches rivers to be operated without end gates, bumpers, chains, etc.

[1] Appellant's first assignment of error is:

"The court erred in his first conclusion of law that 'I conclude as a matter of law that Lee Williams was the agent of the defendant, I. S. Bean,' because said conclusion of law was contrary to the evidence."

His second assignment is:

"The court erred in this third conclusion of law that 'I conclude as a matter of law that the defendant was liable for said damages by reason of the negligent operation of said ferry,' because said conclusion of law was contrary to the evidence."

These assignments cannot be considered. They are too general and do not comply with the rules. Rules 23, 24, 25, 26, and 27 for Courts of Civil Appeals (142 S. W. xii); Yoe v. Montgomery, 68 Tex. 338, 4 S. W. 622; Bonner v. Whitcomb, 80 Tex. 178, 15 S. W. 899; Cain v. State, 47 Tex. Civ. App. 382, 106 S. W. 770; Goodwin v. Burton, 54 Tex. Civ. App. 586, 118 S. W. 587. Under the Texas appellate practice the higher courts have uniformly refused to enter into the investigation of testimony upon an assignment of error which goes no further than to state that the verdict or judgment or matter complained of is not supported by the evidence. The assignment should state in what respect the evidence does not support the verdict or finding—the particulars in which the evidence is insufficient—and not require the court to examine the whole statement of facts to see if it cannot discover some defect or weakness which the party complaining has not pointed out or called specifically to the court's attention. Randall v. Carlisle, 59 Tex. 69; Railway v. McNamara, 59 Tex. 255; Ackerman v. Huff, 71 Tex. 319, 9 S. W. 236; Smith v. Jones, 192 S. W. 799.

[2] The third assignment is.

"The court erred in his second conclusion of law that 'I conclude as a matter of law that the defendant was liable as a common carrier for hire, and an insurer of goods,' because said issue was not raised by plaintiff's pleadings and is unsupported by the evidence."

This assignment raises two propositions: (1) That there is no basis for such finding in plaintiff's petition; and (2) that the finding is without evidence to support it. Under this assignment, appellant submits the proposition that no issue can be decided in any case that is not raised by the pleadings. That is true, but, unfortunately for appellant, in the very first paragraph of plaintiff's petition defendant is charged with being the owner of and operating a ferry across the Angelina river for hire, and as such was a common carrier for hire, and the evidence also raised the issue.

Appellant's second proposition under the third assignment is:

"A ferryman is not liable as a common carrier for hire when the care, control, and management of the property is retained by the owner."

While this proposition is hardly germane to the assignment, we will consider same, as it is tantamount to suggesting fundamental error.

[3] Public ferrymen are common carriers, and as such are liable as insurers of the property committed to their care and for all accidents, except such as arise from the act of God or the public enemy, or by the willful act of the complaining party, and, of course, are answerable in damages for any injury or loss that results from their negligence. 11 R. C. L. § 24, p. 931; Hutchinson on Carriers (3d Ed.) vol. 1, §§ 66, 67; 12 Am. & Eng. Enc. of Law (2d Ed.) 1109; 19 Cyc. 508; Fisher v. Clisbee, 12 Ill. 344; Lewis v. Smith, 107 Mass. 334; Albright v. Penn, 14 Tex. 290; Powell v. Mills, 37 Miss. 691; Wilson v. Hamilton, 4 Ohio St. 723; May v. Hanson, 5 Cal. 360, 63 Am. Dec. 135; Pomeroy v. Donaldson, 5 Mo. 36; Whitmore v. Bowman, 4 G. Greene (Iowa) 148; Hall v. Renfro, 3 Metc. (Ky.) 57; Evans v. Rudy, 34 Ark. 383; Harvey v. Rose, 26 Ark. 7, 8, 7 Am. Rep. 595.

[4] Ferrymen are bound to provide proper boats, with competent attendants, and equip them with all other things necessary and proper for the maintenance of the ferry in an efficient state and safe condition. 12 Am. & Eng. Enc. of Law (2d Ed.) 1107; 19 Cyc. 509–511; Albright v. Penn, 14 Tex. 290; Sturgis v. Kountz, 165 Pa. 358, 30 Atl. 976, 27 L. R. A. 390; Wyckoff v. Queens County Ferry Co., 52 N. Y. 32, 11 Am. Rep. 650; Lewis v. Smith, 107 Mass. 334; Wilson v. Hamilton, 4 Ohio St. 723; Whitmore v. Bowman, 4 G. Greene (Iowa) 148; Yerkes v. Sabin, 97 Ind. 141, 49 Am. Rep. 434; Griffith v. Cave, 22 Cal. 534, 83 Am. Dec. 82; May v. Hanson, 5 Cal. 360, 63 Am. Dec. 135.

[5] While the authorities uniformly hold that a public ferryman who holds himself out as being ready and willing to carry or transport for hire the property of any one who may wish to employ him is, as to the property in his custody, a common carrier, the courts have differed in their views as to the extent of the liability assumed in those cases where the owner of the property accompanies it and continues to retain it under his control. On the one hand, it is held that as soon as the property is placed on the boat for the purpose of being transported it is in the custody of the ferryman as a common carrier, and that the fact that the owner retains the property under his control merely places him in the position of an agent of the ferryman. 19 Cyc. 509; Fisher v. Clisbee, 12 Ill. 344; Powell v. Mills, 37 Miss. 691; Wilson v. Hamilton, 4 Ohio St. 723. On the other hand, it is said that such a rule rests upon no just principle, and that in such cases the ferryman does not assume toward the property the strict responsibility of a common carrier, and is not within the reasons of public policy upon which the extreme liability of a common carrier rests. 11 R. C. L. "Ferries," § 28; Hutchinson on Carriers, vol. 1, § 128; 19 Cyc. 509; Wyckoff v. Ferry, Co., 52 N. Y. 32, 11 Am. Rep. 650; White v. Winnissimmet, 7 Cush. (Mass.) 155; Evans v. Rudy, 34 Ark. 383.

The latter rule would seem to be more in accord with the principles which govern the carrier's common-law liability. In order to impose upon one who undertakes the transportation of property the stringent responsibility of a common carrier, it is essential that he have exclusive control of the property. When this essential element is lacking, when the owner himself retains control of the property, the liability of the ferryman as a common carrier should be qualified, and, when the property is lost or injured, his liability should be governed by the ordinary rules in actions for negligence. Hutchinson on Carriers, vol. 1, §§ 67, 128. This because, when the owner of the property retains its custody and keeps it under his own control, there has not been such a delivery as is necessary to subject the ferryman to the rigorous liability of an insurer, and he should be considered in such cases as undertaking its safety only against defects in his boat and other appliances for the performance of the service and for the neglect or want of skill of himself or his servants. 11 R. C. L. § 28; 19 Cyc. 509; Wyckoff v. Ferry Co., 52 N. Y. 32, 11 Am. Rep. 650; White v. Winnissimmet, 7 Cush. (Mass.) 155; Hutchinson on Carriers, vol. 1, § 128.

[6] Defendant contends that plaintiff did not completely deliver or put the wagon and mules into the custody, care, and management of defendant, but that plaintiff retained the control and possession of same, and that, but for the negligent act of plaintiff in trying to make the mules pull the wagon back onto the boat, they would not have been drowned, insisting that plaintiff's said negligent acts were the direct and proximate cause of his loss. While it is true that but for the effort to make the mules pull the hind wheels of the wagon back upon the boat, without the boat being fastened to the bank, in all probability the accident might have been avoided, still, had defendant exercised that prudence and forethought that the nature of the business in which he was engaged required, and had equipped his boat with end gates, stay chains, bumpers or other means of preventing animals being transported from backing off of the boat, the accident would, unquestionably, not have occurred, as there was no proof that the mules, or either of them, were unduly restless, vicious, or hard to control. In other words, the negligence of the defendant in operating his ferryboat without any means to prevent just such an accident as is here shown was the direct cause of the accident

and loss, for which he must be held liable. 19 Cyc. 510; Pomeroy v. Donaldson, 5 Mo. 36; Wilson v. Alexander, 115 Tenn. 125, 88 S. W. 935; Powell v. Mills, 37 Miss. 691; Fisher v. Clisbee, 12 Ill. 344; Wilson v. Hamilton, 4 Ohio St. 723; Lewis v. Smith, 107 Mass. 334; White v. Winnissimmet Ferry Co., 7 Cush. (Mass.) 154; Harvey v. Rose, 26 Ark. 7, 8, 7 Am. Rep. 595; Evans v. Rudy, 34 Ark. 383; Sturgis v. Kountz, 165 Pa. 358, 30 Atl. 976, 27 L. R. A. 390; Wyckoff v. Ferry Co., 52 N. Y. 32, 11 Am. Rep. 650; Sanders v. Young, 1 Head (Tenn.) 219, 73 Am. Dec. 175; Dudley v. Ferry Co., 42 N. J. Law, 25, 36 Am. Rep. 501; Clark v. Union Ferry Co., 35 N. Y. 485, 91 Am. Dec. 66; Hall v. Renfro, 3 Metc. (Ky.) 51; Yerkes v. Sabin, 97 Ind. 141, 49 Am. Rep. 434; Griffith v. Cave, 22 Cal. 534, 83 Am. Dec. 82.

In Pomeroy v. Donaldson, supra, Pomeroy kept a ferry across the Missouri river, and Donaldson applied to cross. The boat was brought up to the bank and fastened by a chain to a stake driven into the ground. The horses entered the boat in a brisk walk and drew the front wheels of the wagon on the boat, but, when the hind wheels struck the boat, the stake was broken and the boat receded from the shore, the hind wheels being out over the end of the boat. The driver of the wagon, being urged by several parties on the bank of the river, dismounted and cut the fore horses loose from the wagon and backed the wagon with the wheel horses out into the river. One of the horses was drowned and the other escaped. A jury found that the accident was the result of the ferryman's negligence in the operation of the boat without proper safeguards, and the judgment for plaintiff was affirmed.

In Powell v. Mills, supra, plaintiff drove a coach and four horses into the ferryboat and then got off his seat, and, after he had tied up his lines, took a bucket to water the horses. While the ferryman was taking the boat across the river, the driver was standing before the front horses watering them. One of the wheel horses became restive, and the ferryman heard the driver speak to him to quiet him. No one was holding the horses when they started out of the boat, but the driver was watering those in front, and they started to run off the boat before it reached the landing, and the coach was thrown into the river and the property therein damaged. After the driver left his seat he did not have hold of the lines or the horses until they ran out of the boat into the river. The ferryman was talking to the driver while he was watering the horses. The ferry was a public one. Verdict was for defendant, and plaintiff appealed. The court, after stating the law to be that ferrymen are common carriers and liable as insurers of the property sub-mitted to their care, and for all accidents except such as arise from the act of God, or the public enemy, or by act of the plaintiff or his servants, said:

"It plainly results from these principles that, after the stage coach and horses were received into the ferryboat, they were in the charge and keeping of the ferryman, and it became his duty to make such provisions as were required, from the nature of the property committed to his charge, to insure its safe transportation. This, indeed, is the very substance of the obligation incurred by the nature of the business. The responsibility of safely keeping the property during the passage across the river, and of employing all the means necessary to that end, was transferred from the owner to the carrier by the fact of receiving it into the ferryboat; and it devolved upon the defendants to show that the accident which caused the damage occurred, by some of the means above mentioned, as exempting them from liability."

In Fisher v. Clisbee, supra, Fisher operated a public ferry across the Illinois river, and Clisbee's servant, Kuhn, with a horse and buggy, took passage on his boat. and during the transportation plaintiff's horse and buggy backed off of the boat into the river, and the horse was drowned and the buggy and harness damaged. The proof showed that the boat was well built; that when Kuhn came onto the boat with others the ferryman requested them to unhitch their horses; that the owner of the forward team did so; that one of the others said his horse was kind and gentle and did not unhitch him, and that Kuhn did not unloose his horse, nor make any remark; that Kuhn's horse backed once, but was brought forward again, and that defendant told Kuhn that he had better unhitch his horse, which he did not do; that when the horse backed Kuhn stood by his horse's head and took hold of one of the bridle reins which was hitched back on the hook in the saddle of the harness and pulled forward, and thereby the horse's head was pulled around and back; that the horse continued to back, Kuhn holding on and pulling on the check rein, until the horse went off the boat into the river. Judgment was for plaintiff. Defendant appealed. The defendant offered to prove that, had Kuhn unhitched the horse, as requested, there would not have been any hazard; that it was not customary to have chains or bars across the ends of ferryboats on the Illinois river; and that it was usual and customary for passengers to take charge of their own horses while being transported across the river. All this was objected to, and the objection was sustained. The court said:

"We are clearly of the opinion that the defendant's liability was properly held by the circuit court to be that of a common carrier. This liability is very strict. They are held

liable for all damage to goods entrusted to their care, unless the loss is occasioned by inevitable accident, not brought about by human agency, the public enemy, or the owner of the goods. * * * As he [the ferryman] is supposed to be better qualified than even the owner himself to take care of property while in transitu, he has the absolute control over it, and can make such disposition of it as he sees proper, and he must see to it that he carries it safely. Such is the authority and such the liability of a ferryman as to the property which he transports. * * * It is true that travelers usually have a care and to a certain extent take charge of their own teams and property while on the ferry boat, but this is in subordination to the ferryman himself. If they do not manage or dispose of them as he thinks best, he may take them entirely out of their hands and arrange them according to the dictates of his own judgment; for he is responsible for their safety. It is true, if the owner, by his willful and perverse conduct, occasions a loss which would not otherwise have happened. then he cannot charge the ferryman with a loss for which he is alone responsible. * * * There were no guard chains or bars across the end of the boat, and the testimony shows what every man's own judgment would dictate. that the boat would have been much safer had it been thus provided. Had this reasonable precaution been taken, in all human probability this accident would never have happened. * * * The horse and carriage were in the possession and control of the ferryman, and Kuhn was under no more legal obligation to unhitch the horse than he was to assist in propelling the boat. It was strictly the business of the ferryman to do all that was necessary for the safe transportation of the property intrusted to their care. This evidence did not tend to show that Kuhn did anything improper, which contributed in any degree to bring about the accident, but only that he omitted to do that which he was not bound to do."

[7] Defendant urged as a defense that it was customary to operate ferryboats on the Angelina river and the Neches river without end gates, stay chains, guard rails, bumpers, etc. The fact that it was customary to operate boats on the Angelina and Neches rivers without guard rails, end gates, stay chains, bumpers, etc., will not excuse defendant; for, being in a sense an insurer of the property transported, it was his duty to exercise a high degree of prudence and foresight in anticipating that such contingencies might arise, and such accidents occur, and prepare proper safeguards and equipment to his boat to prevent same. It is not enough that this and other ferries may have carried animals safely without these protective measures. If for the want of them losses occur but seldom, they are still such as might be readily anticipated, and easily and cheaply provided against. Miller v. Pendleton, 8 Gray (Mass.) 549; Lewis v. Smith, 107 Mass. 334; Fisher v. Clisbee, 12

Ill. 343; Wilson v. Hamilton, 4 Ohio St. 722.

Finding no reversible error in the record, and the judgment being such as was proper under the pleadings and proof, it should be affirmed; and it is so ordered.

---

⊦⊦⊦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes