# COUNTY OF YORK.

### JOEL E. MOULTON *versus* INHABITANTS OF SANFORD.

If there are two efficient, independent proximate causes of an injury sustained by a traveller upon a highway, the primary cause being one for which the town is not responsible, and the other being a defect in such highway, the injury cannot be said to have been received "through such defect;" and the town is not liable therefor. And it makes no difference that the traveller himself was in no fault.

EXCEPTIONS from the ruling of GOODENOW, J.

This was an action on the CASE to recover for personal injuries, and for damages to plaintiff's horse and wagon, alleged to have been occasioned in consequence of a want of railing on a bridge in the highway in the defendant town.

*Kimball & Miller*, for the plaintiff.

*Low*, for the defendants.

The facts are sufficiently stated in the opinion of the Court, which was drawn up by

DAVIS, J.—The plaintiff, according to his own testimony, was crossing a bridge over a narrow stream in the town of Sanford, when his horse was frightened by some animal jumping into the water. The bridge was of sufficient width, and well built; but there was no railing. The horse being thus frightened, and unmanageable, ran so near the edge that the body of the wagon was detached from the forward wheels, and thrown off into the stream.

As the primary cause of the accident,—not *remote*, but *proximate* and efficient—was one over which the inhabitants of the town had no control, and for which they were not responsible, no argument would seem to be necessary to show that they ought not to be held liable, even if the ques-

tion were new. But the case is clearly within the principle laid down in *Moore* v. *Abbott*, 32 Maine, 46.

That case was tried by SHEPLEY, C. J.; and he instructed the jury " that the town was not liable unless the accident occurred, and the injury was occasioned, by the defect in the way or bridge alone; and that, if the accident happened by the joint effect of a defect in the way, and a defect in the harness, rendering it unsuitable or unsafe, although such defect were not known, and the plaintiff was not in fault for want of knowledge, he would not be entitled to recover." These instructions were sustained, on exceptions, by the full Court, in an opinion the intrinsic force of which it will not be easy to overturn. As the extracts here quoted are from the instructions given to the jury, and not from the opinion of the Court, they cannot be called the *dicta* of the Judge who delivered it.

This decision has never been questioned by the Court in this State. It is referred to and recognized in *Coombs* v. *Topsham*, 38 Maine, 204; and in *Anderson* v. *Bath*, 42 Maine, 346. The question, therefore, might be considered as settled, beyond controversy. But, as it is still a subject of discussion in other States, it may be well to re-examine it.

Two causes, both of them proximate, may concur to produce an injury. When one of these is a defect in the highway, and the other any fault of the plaintiff, it is not claimed that he can recover. But when one of the causes is a defect in the way, and the other is some occurrence for which neither of the parties is responsible, is the town liable to the party injured?

This question was raised in the case of *Hunt* v. *Pownal*, 9 Vermont, 411. It was afterwards before the courts in Maine and in Massachusetts, in 1849 and 1850, neither being aware that it was before the other. In Massachusetts the Vermont decision was at first sustained. *Palmer* v. *Andover*, 2 Cush., 600. In this State, in the case before cited, it was declared to be unsound.

Towns are liable for injuries to tavellers only when they are received "through a defect" in the way. When any other efficient, independent cause contributes directly to produce the injury, it cannot with certainty be said to have been received through the defect. For in such case the other cause might have produced the injury if there had been no defect; and the damages caused by both jointly cannot be apportioned between them. Such has been understood to be the rule in this State.

If there is any reason why this rule should be relaxed in other cases for damages caused by negligence, it does not apply to such suits against towns. These corporations do not, like railroad companies, undertake to carry passengers for hire. There is no privity between a town and the travellers who pass through it. The town is under no obligation to them, arising from any contract, or any natural relation. If the roads are not safe, the neglect is of a public duty only, having no foundation except in a special statute. It was proper that a remedy should be given for injuries caused solely by the neglect of towns, not only as an indemnity to individuals, but as an inducement to greater diligence and care. But the statute is in its nature penal, as well as remedial, and ought to be construed strictly. The language imposing the liability does not fairly embrace any case in which any other efficient cause, besides the defect in the way, contributes to produce the injury.

Nor is there any necessity, in order to make the remedy available, to extend the liability by construction. The sympathy of juries is always strongly in favor of the person injured. The danger of abuse is not in *limiting* the remedy, but in *enlarging* it. If towns are to be held liable for injuries occasioned in part by other causes than their neglect, they will be made practically insurers of the safety of travellers against all accidents, however inevitable, if they happen upon a defective road, and are not caused by their own carelessness. This could never have been the design of the statute. All persons are liable to meet with accidents and

injuries, at home, and abroad. This is no reason why they should call upon the community for compensation. Misfortune alone, though it happens to a traveller upon the highway, gives him no valid claim against the town in which he meets it, unless it is reasonably certain that it would not have occurred but for the neglect of such town.

The case of *Palmer* v. *Andover* concedes that this certainty should always be established; but the rule laid down in that case does not secure it. It assumes such certainty under circumstances which render it impossible. It was probably for that reason that one member of the Court, generally understood to have been Chief Justice SHAW, dissented from the opinion. The law is there stated as follows :—

" When the loss is the combined result of an accident, and of a defect in the road, and the damage would not have been sustained but for the defect, although the primary cause be a pure accident, yet, if there be no fault on the part of the plaintiff, and the accident be one which common prudence and sagacity could not have guarded against, the town is liable."

This is a correct rule, if there are any cases in which it can be applied. But how shall the jury determine " that the damage would not have been sustained but for the defect?" If there is a latent defect in the harness, or in the carriage, and it fails at a place where the road is defective, by what means can it be made certain that it would not otherwise have failed where there was no defect in the road? If a horse is frightened by seeing a railroad train, or hearing the report of a gun, or by the sudden appearance of some object by the wayside, he may become unmanageable, run away, and cause damage to person or property. The injury may happen at a place where the road is defective. But, if there is no defect in the way, it may occur by turning the corner of a street, or by meeting another carriage, or by one of many other causes for which the town is not responsible. So long as the primary cause continues in force, that only is certain; everything else is uncertain. If I *care-*

*lessly* fire a gun in the street, and thus cause the fright, and no *independent* cause combines with it, I may be liable for the result. *Moody* v. *Ward*, 13 Mass., 299. That this is one cause of the injury, however occurring, there will be no doubt. But, if it had not caused the injury in one way, no one can tell whether it might not have caused it in another. What other circumstances might have combined, or what would have been the effect of any particular combination, could no more be determined in any case, than the combination of colors in a kaleidoscope. To instruct the jury to decide whether "the damage would have been sustained but for the defect," would be sending them into the field of mere conjecture.

When a horse becomes unmanageable, unless his condition is caused by a defect in the highway, such defect is not the primary cause of an accident to which it contributes. A witness, on being asked to state the cause of such an accident, would give that which caused the condition of the horse. So long as the primary cause continues in operation, it may occasion the damage; and, if it happen upon a defective road, it is by no means thereby rendered certain that it would not otherwise have occurred upon one not defective. For it is clearly true, as was said by SHEPLEY, C. J., in *Moore* v. *Abbott*, "that no proof can establish the fact," that the damage would not have been sustained but for the defect, "so long as it appears that some other cause contributed to the result."

It is argued that, if a traveller's horse becomes unmanageable, he needs a good road all the more. That is conceded. But, under such circumstances, no perfection in the road can insure his safety. Nor does it follow that the town is bound to indemnify him if the way is defective. The remedy cannot be presumed to have been given by the statute to any except those who have safe carriages and horses, under their control at the time. It is the "safety" of such "travellers" that towns are bound to secure, so far as it can be done by good roads. R. S., c. 18, § 37. They are not

bound so to make their roads that travellers shall be safe when their horses are frightened and unmanageable. If they need a more perfect way at such a time, it is because they are involved in a danger not caused by any neglect of the town, and for which, in whole or in part, the town ought not to be held responsible.

In holding that the damage must be caused by the defect in the way alone, it is intended, that the town is not liable if any other independent proximate cause contributes to the result. The maxim that the proximate, and not the remote cause, is to be regarded, applies here as elsewhere. As a defect in the way, when it is only a remote cause of the injury, will not render the town liable, so if the defect is a proximate cause, a remote contributing cause will not prevent the town from being liable. All discussion of remote causes is therefore out of place. For the rule goes to this extent only—that if, besides the defect in the way, there is also another proximate cause of the injury, contributing directly to the result, for which neither of the parties is in fault, the town is not liable.

Nor does the rule apply to a case where the injury is produced by a *chain* of *dependent* causes. Or, rather, in such a case, the *primary* cause is held to be the *sole* cause, acting through agencies *produced by itself*. If the primary cause is wrongful, and not too remote, the author may be liable for the result. When any *intermediate* agency is the result of *negligence* in any other party, the question of liability is often difficult. But, as the contributing cause in the case at bar was *independent*, no such difficulty arises.

Notwithstanding the case of *Palmer* v. *Andover*, we understand this rule now to be the law in Massachusetts. In the case of *Marble* v. *Worcester*, 4 Gray, 395, SHAW, C. J., in giving the opinion of the Court, says,—"Upon the true construction of the statute, the town is responsible only for the direct and immediate loss occasioned by the defect in the highway. And it follows as a consequence, that if the damage arises from a more remote cause, or from any ef-

Moulton *v.* Inhabitants of Sandford.

ficient concurring cause, without which it would not have happened, or from pure accident, in either case it is not a loss for which the town is liable."

"It is no argument," he continues, "against this conclusion, that if the town is not liable in such a case, a suffering party is without remedy. The loss must fall within the same category with the infinite number of cases where persons sustain great losses from pure accidents and misfortunes, for which no person is responsible, and where the loss must finally rest where it falls."

The doctrine is stated in another form by the same eminent jurist, in *Murdock* v. *Warwick*, 4 Gray, 178. "In order to recover of a town for a defect in its highway, the traveller must not only drive with due care and skill, but must be using a proper horse and vehicle, with a strong and suitable harness; and, if there be any defect in these particulars, and such defect contribute to the disaster, the town is not liable, although the way be defective. The reason is, because it is impossible to know what proportion of the damage is occasioned by one, and what by the other; or, whether there would have been any damage at all but for the traveller's own default." *Rowell* v. *Lowell*, 7 Gray, 100.

We are aware that these cases, and that of *Moore* v. *Abbott*, have recently been controverted, in a very able opinion, by the Supreme Court of New Hampshire, in the case of *Winship* v. *Enfield*, 42 N. H., 197. But, whatever may be the weight of authority, which we do not question, we are satisfied that the law, as held in this State and Massachusetts, is sustained by sound reason, by a fair construction of the statute, and by a proper application of established rules of evidence; while the opposite doctrine would render the towns, with many of their numerous roads almost unavoidably imperfect, the insurers of travellers against all accidents occurring thereon, from whatever cause, unless occasioned by their own negligence.

In the case at bar, the direct, primary cause of the injury was one for which the town was in no degree responsible.

Without it, it is probable that the accident would not have happened; while with it, if there had been no defect in the bridge, it is by no means certain that the damage would not have been sustained. The jury should have been instructed that, upon the facts stated by the plaintiff in regard to the cause of the accident, he was not entitled to recover.

*Exceptions sustained.*

CUTTING, KENT, WALTON and BARROWS, JJ., concurred.

APPLETON, C. J., RICE, and DICKERSON, JJ., dissented.

APPLETON, C. J.—By R. S., 1857, c. 18, § 61, "if any person receives any bodily injury or suffers any injury in his property *through any defect or want of repair or sufficient railing* in any highway, town way, *causeway or bridge,* he may recover for the same, in a special action of the case, of the county, town or person, obliged by law to repair the same, if such county, town or person had reasonable notice of the defect or want of repair." The plaintiff must be in exercise of ordinary and common care, and, if while thus in the exercise of ordinary and common care, he receives a bodily injury "*through any defect,*" &c., in a highway which the defendants are bound to keep in repair, and of the existence of which they had reasonable notice, he is entitled to recover compensation in damages for the injury thus received.

The statute says, "*through* any defect or want of repair or sufficient railing." It does not add the word *alone.* It is not for us to intensify the rigor of the statute. It rarely, if ever, happens that an injury occurs through a *defect alone,* though it may occur through a *defect.* The coëxistence of other facts must be assumed, without which, the event in question would not have happened. The cause of an event is the sum total of the contingencies of every description, which, being realized, the event invariably follows. It is rare, if ever, that the invariable sequence of events subsists between one antecedent and one consequent. Ordinarily that condi-

tion is usually termed the cause, whose share in the matter is the most conspicuous and is the most immediately preceding and proximate to the event.

It seems to have been thought that, in *Moore* v. *Abbott*, 32 Maine, 46, the rule was established that the injury must occur through the *defect alone*—thus intensifying the statute and relieving a town from liability, whenever there is found a coöperating cause, however slight in its importance, and though it be one for which the plaintiff is not responsible and when the same result would or might have ensued, without such coöperation. But, in determining what is decided, it is important to see what is presented for decision—for it is the point decided, and not the reasoning of the Court, by which the result is arrived at, which has the binding force of an authoritative exposition of the law. In that case, SHEP-LEY, C. J., instructed the jury that the town was not liable "unless the accident occurred and the injury was occasioned by the defect in the way or a bridge *alone*, and not by the joint effect of the defect in the way and a defect in the horse and wagon, or either of them; that, if they should be satisfied the accident happened by the joint effect of a defect in the wagon and a defect in the harness, rendering it unsuitable or unsafe, although such defect in the harness was not known and the plaintiff was not in fault for want of knowledge, the plaintiff would not be entitled to recover." The only question here arose between the plaintiff and defendants as to the extent of the plaintiff's responsibility for his harness and his wagon. The existence of extraneous facts, for which neither party was responsible, and their effect upon the liability of the defendants, were not involved in the discussion. They were in no way before the Court. Whether the plaintiff was responsible for a defect in the wagon or harness, of the existence of which he was ignorant, and without fault for his ignorance, was the question, and the Court held he was thus responsible; in other words, that he warranted the goodness of his wagon, harness, &c., and could not recover if the injury occurred in any degree through defects in them.

This doctrine was reäffirmed in *Coombs* v. *Topsham*, 38 Maine, 214, and in *Anderson* v. *Bath*, 42 Maine, 346. To this extent only have the decisions gone. In New Hampshire the Supreme Court have decided somewhat differently, having held, in *Winship* v. *Enfield*, 42 N. H., 197, that " where the vices of the horse or the defects in the wagon may have contributed to the injury, if there was also fault on the part of the town that contributed to the same result, the defendants will be held liable, provided the plaintiff was without fault." All that is there required is ordinary care on the part of the plaintiff in reference to his horse, harness, &c., and, if that be shown, he is not held responsible for any secret or unknown defect, the ignorance of which is not imputable to him as a fault. But, in this State, the plaintiff, guarantees against all defects latent or patent in his wagon, horse and harness. In none of the cases in this State was the effect of accidental and extraneous causes, over which neither party had control and for which neither was responsible, considered or discussed.

The question here presented is, how far either party is to acquire rights or to be relieved from liability in consequence of the intervention of accidental causes, or the existence of facts over which neither party has control and for the occurrence of which neither party is in fault, the party suffering damage being in all respects free from fault, and the town being guilty of neglect, its road being out of repair.

The inquiry here arises, whether a town, guilty of neglect, its roads out of repair, with reasonable notice of their condition, the plaintiff omitting no precaution, — in the exercise of the requisite degree of care, — is to be exonerated from liability because the horse was frightened by the lightning, the act of God — by the firing of a gun, the act of man — by the unexpected presence of an animal, tamed or untamed — by the crash of a falling tree — and being frightened and passing with accelerated speed over a defective road or bridge, receives an injury, when, but for the fright, he might, *perhaps*, have passed over in safety or with greatly increased

chances of safety. The horse may be frightened without fault on the part of the driver. He may be frightened, and yet be a docile and well broken animal. The fright thus suddenly caused may hasten his speed. He may thus become unmanageable, or manageable with more or less of difficulty. In this condition he passes over a defective road. If the road had been in suitable repair the horse would have passed in safety. The horse steps into a hole and breaks his leg. Is not the accident " *through the defect?*" May it not be *through the defect*, though, without the fright, it might or might not have occurred. A horse on the walk and not frightened — or, being driven very slowly, may pass over almost any defect. But the driver has a right to anticipate a good road, and that the town has done its duty. Are towns to be exempted from the liability imposed by the statute, in those cases where good roads and railed bridges are specially needed? A defendant town, guilty of neglect, with its roads out of repair, by way of answer to a suffering but faultless plaintiff, pleads in bar that his horse was frightened, that the fright increased his speed and the dangers arising from their neglect, and thus coöperated with their neglect in producing the injury, and, therefore, that they should be excused from the performance of their duty. One would hardly deem the answer satisfactory — or that, when the demand is most imperative for a good road, the town should be relieved from its obligation of having one.

But it may be said that it cannot be assuredly certain that the injury was received " through the defect." But that is for the jury. The difficulty of decision is one inherent in every case of this description. It is the ever recurring question of causation — by what, by whom, how was an event caused. But the preëxistence, or the coëxistence of other facts, more or less important, is not incompatible with the fact of the injury having been received *through the defect*. It may happen *through the defect*, when a horse is frightened, though it would not have happened without such fright. It may be more likely to happen to a horse frighten-

ed than to one not—yet it may nevertheless happen *through the defect*. The fright may have increased the probability of its happening or diminished the chances of its avoidance, but, notwithstanding all this, if it was received *through the defect*, why is not the town liable? All that the statute requires is, that the injury happen "through the defect."

But the inquiry is made, "how shall the jury determine that damage would not have been sustained *but* for the defect?" That is not the true issue. It is rather, did the injury happen without fault in any way on the part of the plaintiff and through the existing defect? The horse is at the place where the defect is, with more or less of fright and with more or less of speed—being there, without fault on the part of the driver, he steps upon a defective plank, or into a hole, and breaks his leg. Was the injury through the defect? The fright did no harm—the speed did no harm—the horse would not have been there at such speed and in such fright without the intervention of some extraneous event by which it was caused, and an injury might not have been received. Or, without fright or unusual speed, the same weight of the slowly stepping horse upon the rotten plank might have been attended with the same result. The driver being there, as he was—under the circumstances, in time and space as then existing, and being without fault, the road being defective, may not the injury be received through such defect, and, if so, is not the town liable? Is the contingency of its not happening, if there had been no fright, to exonerate the town? Are the jury, groping in the dark, to guess what might have happened upon an hypothetical state of facts, which did not occur, or to decide upon what did occur. Is the town in fault, neglectful of its duty, to be exonerated from liability because of a possibility, for the certainty cannot be known, that, without the intervention of a given fact, for which neither is responsible, the accident might not have happened.

But it may be urged that the liability of the defendant

town can never be established, so long as it appears some other cause contributed to the result. But, what other cause? Here is one antecedent, and for which the plaintiff may not be responsible. In one sense the whole antecedent past contributed to the result—for without such antecedent past the actual present would never have been. The chain of antecedent causes runs back into the regions of an illimitable past. How far is the antecedent fact to be removed from the injury, to be deemed not to have contributed to its occurrence? The harnessing the horse — the passing over the road to the place of the accident, are antecedent facts, equally with the firing of the gun or the falling of a tree. Had the plaintiff started earlier or later, there would have been no fright. The presence of the horse at the time and place of the accident, concurred equally with the firing of the gun, to bring about the result. Yet neither produced the injury. It was subsequent. It was caused by the defective plank failing to sustain the weight of the horse thereon — and it would have failed equally whether the horse had been frightened or not, had the same step in each case been made with equal force upon the same rotten plank.

It is apparent, if the law be as it is insisted to be, that, in case of a fright and an injury subsequently received, the town can never be made liable, however defective and dangerous the road — however careful the driver — however strong the harness, and however docile the horse. The fright will be caused by the act of the plaintiff, or by something extraneous and existing without his interference. If the fright was caused by the plaintiff's negligence, this will bar his recovery. If caused by some event for which neither party is responsible, then, as it may have contributed to the injury, though, in many cases, it can never be known that it would not have happened without such fright, the town is to be relieved from the consequences of its own neglects. There can be no case where a fright, however caused, will not protect a town from liability for a road however defective, or a bridge however dangerous. The

conclusion of the whole matter, then, would be, that where the danger is the greatest, the responsibility is the least— a conclusion to which we do not feel disposed to accede.

In cases of the description considered, the existence of an antecedent fact producing the fright, for the fright precedes the time when the horse comes in contact with the defect in the highway, should never necessarily exonerate the town, because, notwithstanding the fright, the injury might have been received "through the defect." Besides "*causa proxima, non causa remota spectatur.*" The defect is *causa proxima,* the cause most immediately antecedent to the injury, and through which it was received—the one in the closest proximity to the injury consequent. The plaintiff, in the case supposed, has been guilty of no neglect—the defendant has been guilty of neglect—and an accidental event, occurring without the intervention of either party, though coëxisting with the defect, is not to relieve the defendant from a liability justly arising from an omission of duty. *Norris* v. *Litchfield,* 35 N. H., 276; *Palmer* v. *Anderson,* 2 Cush., 600; *Hunt* v. *Pownal,* 9 Vt., 411; *Kelsea* v. *Glover,* 15 Vt. 711; *Clarke* v. *Barrington,* 41 N. H., 45; *Winship* v. *Enfield,* 42 N. H., 197.