# W. W. Sturgis *v*. Wm. J. Kountz, Jr., Appellant.

*Negligence—Ferries—Loss of horse—Contributory negligence.*

It is the duty of a ferryman who undertakes to carry passengers, horses and vehicles for hire, to carry safely as against defects and insufficiency of his boat or neglect on part of himself and servants.

A passenger who assumes the care of his horse while on a ferryboat is bound to exercise ordinary watchfulness and skill to prevent loss or injury.

Where a horse on a ferryboat is frightened by a whistle sounded on another boat, and backs through a defective guard-rail, and is drowned, the question of the ferryman's negligence in not maintaining a proper rail, and of the owner's contributory negligence in not getting off his vehicle and holding his horse by the head, is for the jury.

*Negligence — Remote and proximate cause — Fright of horse — Steam whistle—Ferry.*

The owner of a ferryboat is bound to foresee that horses on his boat may take fright at the sound of whistles from other boats, and to guard against the horses backing into the water, by sufficiently strong rails.

In such a case where a horse is frightened by a whistle and plunges against a spliced and defective rail which breaks, and the horse is lost, the defective rail is the independent intermediate cause, without which, notwithstanding the primary cause, the injury would not have been inflicted.

Argued Oct. 23, 1894. Appeal, No. 39, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1893, No. 640, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for loss of horse and buggy. Before WHITE, J.

The jury returned the following special verdict:

" We find for the plaintiff $365, and also find the following facts : The accident to the plaintiff was caused by the blowing of steam on a tug boat passing near the ferryboat, which frightened the horses on the ferryboat, causing the team in front of plaintiff to prance and back against plaintiff's horse, thereby causing plaintiff's horse to rear and back and in a frightened condition whirl around suddenly, strike the guard-rail across the entrance of the wagon way with his body, breaking the rail and plunging into the river.

" The verdict, subject to the opinion of the court on the question of law reserved, to wit, whether upon the facts stated the proximate cause of the accident was the blowing of steam on the tug boat, in the sense that the defendant was not responsible for the accident, although the guard-rail may have been defective ; and if so, judgment to be given for defendant non obstante veredicto."

The following opinion was filed by WHITE, J. :

" The only legal question raised at the trial and the only point presented was that of the defendant, that under all the evidence the verdict should be for the defendant, which was refused.   The question of the plaintiff's contributory negligence was submitted to the jury and found in his favor.   The negligence of the defendant was alleged to be a broken and defective rail across the wagon entrance which was an insufficient guard, and in consequence thereof the plaintiff's horse and buggy broke through and fell into the river.   The evidence showed that the rail had been broken and spliced and that a new rail had been ordered before the accident, but was not furnished until a day or two afterwards.   The defendant's contention was that, admitting a defective rail, the plaintiff could not recover, because the proximate and controlling cause of the accident was the blowing of the tug's whistle, which frightened the horses, and for which the defendant was not responsible.   This is the legal question, upon the facts stated in the special verdict, which was reserved.

" The defendant, on the question of proximate cause, relies upon Township v. Wagner, 127 Pa. 184, and the subsequent cases of Worrilow v. Township, 149 Pa. 40 ; Herr v. City of Lebanon, Ib. 222 ; Schaeffer v. Township, 150 Pa. 145, and Kieffer v. Hummelstown Boro., 151 Pa. 310.   But all these cases may be distinguished from the one at bar.

" In Township v. Wagner, the plaintiff's horse was frightened at two donkeys on the road, suddenly turned round, broke off a wheel of the wagon, ran back some distance, when the hub of the broken wheel struck a stone pile and the hind wheel dropped into a depression in the road, overturning the wagon and injuring plaintiff.   The road was in good condition for a width of fifteen feet at the place of the accident and safe for all ordinary purposes.   It was held that ' if the plain-

tiff's injury was not due to any unsafe condition of the road, but to the successive accidents which befell her, and which had no connection whatever with the road or with the doings or misdoings of the supervisors,' the township was not liable.

" In Worrilow v. Township, the plaintiff was driving in a wagon, and to avoid two bulls that were fighting in the road he drove close to one side, when his wagon struck' a tree projecting over the road ; he was thrown out and injured. As the road was sufficiently wide and safe for all ordinary purposes, the fact that the tree projected somewhat over the road, it was held, was not negligence in the township.

" In Herr v. City of Lebanon the plaintiff was a passenger in an omnibus going up a hill, when one of the horses fell and in his repeated struggles to get up dragged the other horse and vehicle to the side of the street and the omnibus and team went over a steep declivity, injuring the plaintiff. The street was twenty feet wide and in good condition. It was held that the proximate and efficient cause of the accident was the fall and struggles of the horse, that even if there was negligence in not having a guard-rail at the declivity, the city was not liable, because this was such an accident (the fall and struggles of the horse) as the city was not bound to anticipate or guard against.

" Schaeffer v. Jackson Township was another case arising out of the same accident as Jackson Township v. Wagner, where the horse was frightened by the donkeys. It was held that although the township may have been guilty of negligence in not remedying a defect in the highway, yet in this case the township was not liable because there was a concurring outside cause (scaring at the donkeys), which was not a natural or probable consequence of not remedying the defect in the road, and not such an event as might be foreseen by ordinary foresight and to be guarded against.

" In Kieffer v. Hummelstown Borough the plaintiff's horses became frightened at the firing of guns, and the horse he was riding fell on a pile of stones at the side of the road, crushing his leg. It was held that as the road was sufficiently wide and safe for all ordinary purposes the borough was not liable, because the frightening of horses by the firing of guns was not a danger that could reasonably be anticipated, imposing a duty on the borough to guard against it. It was said that to enable a plain-

tiff to recover 'he must show that the ordinary needs of the public travel, conducted in the ordinary way, had not been anticipated and provided for, and that his injury was a natural and probable consequence of the neglect of this duty.' Jackson Township v. Wagner, Worrilow v. Township and Schaeffer v. Jackson Township were cited and approved.

" This brief review of those cases shows that they were all decided on the ground that there was no responsible negligence on part of the defendants; the accident occurred from outside or extraordinary causes, against which the defendants were not bound to provide, because they were not to be anticipated or foreseen by ordinary foresight.

" In the case at bar it was undoubtedly the duty of those in charge of the ferryboat to guard against accidents from horses becoming frightened on the boat, for that might fairly and reasonably be anticipated. It was something that might naturally and probably be expected. No doubt for this purpose the guard-rail at the wagon entrance was provided. Horses might be frightened by the shaking and moving of the boat on the water. They might be frightened by passing boats or steam whistles on the river, and these were matters to be expected and provided against.

" Whether the ordinary rail used on this ferryboat was sufficient for all ordinary purposes, or was such as would have prevented this accident, we do not certainly know. I am inclined to think that the ordinary rail would have given way from the force with which the horse struck it. In his fright he whirled suddenly round and struck it with his body. It would have required a very heavy and strong rail to have prevented him from plunging into the river. But the rail was defective. It had been broken and was spliced temporarily until the new rail could be procured. The very fact that a new rail had been ordered indicates that the men in charge thought it was not safe or sufficient.

" Upon the facts stated in the special verdict we are of opinion, on the question of law reserved, that the law is with the plaintiff, and order judgment on the verdict for the plaintiff on payment of the verdict fee."

*Errors assigned* were (1) refusal of binding instructions for

defendant; (2) entry of judgment on special verdict; quoting instructions, special verdict and opinion.

*E. Z. Smith, Thomas Patterson* with him, for appellant.—In Herr v. Lebanon City, 149 Pa. 222; Twp. v. Wagner, 127 Pa. 184; Worrilow v. Twp., 149 Pa. 40; Schaeffer v. Twp., 150 Pa. 145; Kieffer v. Boro., 151 Pa. 310, horses were frightened on the public highway by various causes; in one by two bulls fighting; in another by a donkey drawing a cart loaded with tin cans; in another by some one discharging a gun near the road; and in all cases the frightened horses ran either into some obstruction in the highway or over some insufficiently guarded place.    In all the same rule was applied, that the fright of the horse caused by a startling and unexpected object was the proximate cause, the defect in the highway being but an incidental or secondary cause.    See also definition of proximate cause in Behling v. Pipe Lines, 160 Pa. 359.

The liability of a ferryman is not that of a common carrier, at least where the passenger retains control of his own property.    It is most nearly like the liability of the owner of a bridge or turnpike.    The ferry is really but a continuation of the public highway: 7 A. & E. Ency. L., tit. Ferries, pp. 941 and 947.

′ Plaintiff was guilty of contributory negligence : White v. Winnisimmet Co., 7 Cush. 155; Traction Co. v. Bernheimer, 125 Pa. 615.

*M. H. Stevenson, W. T. Tredway* with him, for appellee, cited, on question of contributory negligence: R. R. v. Hope, 80 Pa. 373; Haverly v. R. R., 135 Pa. 59.    On the question of proximate cause, Behling v. Pipe Line, 160 Pa. 359; Township v. Watson, 3 Atl. R. 859, note.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895:

The defendant was the owner of a ferryboat, " William Thaw," plying between the lower part of Allegheny City and south side of the Ohio river.    On the 9th of February, 1892, the plaintiff, Dr. W. W. Sturgis, a practicing physician, drove on the boat in a light two wheeled sulky, to be ferried from north to south side.    The boat left the wharf, and was some

distance from it in the channel, when it was passed by a small tug boat, the " John Dippel " which, when near to the " William Thaw," blew its steam whistle. This frightened the horses, of which there were a number on the ferryboat. The entrance on the boat from the landing had been closed by a wooden rail or bar to prevent frightened or unruly horses from backing vehicles off the boat, or from plunging over into the water. When frightened by the scream of the whistle, the horses commenced backing and plunging. The plaintiff was sitting in his sulky, the horse's head in the direction of the forward part of the boat, and the rear of the sulky not far from the cross bar, which protected the entrance: in front of him was a two horse team, which backed against plaintiff's horse; his horse then backed, turned almost around towards the outside of the boat, struck the cross bar with his shoulder, broke it, and plunged into the river with sulky and driver. The horse was drowned, the sulky lost, but the owner was rescued without sustaining any serious personal injury. He brought suit for loss of his horse and sulky against defendant, the owner of the ferryboat, averring negligence in putting up and using a defective and insufficient cross bar to protect the owners of teams in traveling on the boat. The bar had been broken and spliced to be used, temporarily, until a new one was procured. Several days before the accident, the inspector of hulls had called attention to the defective rail, and directed it should be replaced.

The jury rendered a special verdict for plaintiff, in the sum of $365 damages, subject to the opinion of the court on the question, whether the blowing of the whistle on the tug " Dippel " was the proximate cause of the accident in the sense that the owner of the " Thaw " was not responsible, even if the guard bar or rail was defective. If so, then judgment to be entered for defendant notwithstanding verdict for plaintiff.

The court, afterwards, in an opinion filed, entered judgment for the plaintiff on the verdict. From this defendant appeals.

While, as argued by appellant, the liability of a ferryman, under the facts in this case, was not exactly as great as that of a common carrier of goods, nevertheless, having undertaken to carry the plaintiff, with his horse and vehicle, for hire, his duty was to carry safely as against defects and insufficiency of his boat or neglect on part of himself and servants. At the same

time the plaintiff, the owner of the horse and sulky, assuming the care of them while on the boat, was bound to exercise ordinary watchfulness and skill to prevent loss or injury : Wyckoff v. Ferry Co., 52 N. Y. 32. And, as is said in Clark v. Ferry Co., 35 N. Y. 485 : " They (the owners of the boat) are also required to be provided with all proper and suitable guards and barriers on the boat, for the security of the property thus carried, and to prevent damage from such casualties as it would be naturally exposed to, although ordinary care is required on part of the traveler." In this last case, as here, a horse was lost while the owner was in the vehicle ; it took fright and backed against the chain which was used to close the entrance to the ferry deck ; the chain broke because of a defective hook in it. The ferry company was held answerable for negligence. To the same effect are Lewis v. Smith, 107 Mass. 334 ; Walker v. Jackson, 10 M. & W. 161.

Therefore, in view of the verdict, the single assignment of error for our consideration is the one urged, that, even if the broken rail was defective, the proximate and controlling cause of the accident was the blowing of the tug whistle, for which defendant is not answerable, and that the court erred in not so instructing the jury.

The question of negligence of defendant, in not providing such a guard-rail as ordinary care required ; the question of the alleged contributory negligence of plaintiff in not getting from his sulky and taking his horse by the head and quieting him, were both fully and impartially submitted to the jury and found against defendant.

It seems to us, under the facts, the blowing of the whistle, although the originating cause of the injury, cannot relieve the defendant from liability. The cases cited and presented so concisely by the learned counsel for appellant are unanswerable when applied to the facts in them, and even to facts as he assumes them to be in this issue, if some of the significant intermediate facts be not noticed. " The true rule is, that the injury must be the natural and probable consequence of the negligence ; such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer, and likely to flow from his act." Township v. Watson, 3 Atlantic R. 869. To the same effect is Behling

v. Pipe Line, 160 Pa. 359.    And so all the cases, cited on both sides, either expressly or by implication, rule.

Was the plunging of this frightened horse against the guard-rail such a consequence as 'ought to have been foreseen by the owner of a ferryboat?   The primary cause of the plunging was the blowing of the whistle ; but the primary is by no means always the natural and probable cause of the particular injury. It is not, when there is a sufficient and independent cause between it and the injury.    In such case resort must be had by the sufferer to the originator of the intermediate cause.    As is said by AGNEW, J., in Railroad Co. v. Hope, 80 Pa. 377, the question is " was there a continuous succession of events so linked together that they become a natural whole, or whether the chain of events is so broken that they become independent and the final result cannot be said to be the natural and probable consequence of the primary cause."    The primary, natural and probable consequence of the blowing of the whistle was the fright of the horses and their rearing and plunging ; any injury they might have done to each other, or those in charge of them on the boat, would not have been attributable to the owner of the ferry-boat, because that was the consequence of the primary cause, the blowing of the whistle.    But what is naturally to be expected from a frightened horse on the narrow circumscribed deck of a ferryboat?    Manifestly, that he will plunge off it into the water. This the ferryboat owner, to a large extent, provided against by guard-railing of sufficient strength all around the boat except at one place, the entrance; and here it was, usually, strong enough to prevent such an accident, but on this day was not. The horse plunged against the spliced and defective rail, which broke and it went over.    Here was an independent intermediate cause, or omission of duty, without which, notwithstanding the primary cause, the injury would not have been suffered.    And the jury, on sufficient evidence, have found defendant was negligent in maintaining a defective guard-rail at that point.

Says APPLETON, C. J., in Moulton v. Sandford, 51 Me. 134: " Ordinarily, that condition is usually termed the cause whose share in the matter is the most conspicuous and is the most immediately preceding and proximate in the event."    It does not help us much in the administration of justice to refine on the distinctions between cause and condition in bringing about

results. Taking the case before us on its facts it is not essentially different from Hey v. City of Philada., 81 Pa. 44. The plaintiff was driving his horse in a park maintained by the city for the use of the public. He was on a roadway 50 feet wide which curved round the declivity very near a steam railroad, the high bank on the right of the roadway descending very abruptly to the Schuylkill river; at this side there was no barrier or railing; the horse took fright at a locomotive whistle on the railroad, plunged down the bank into the river and was drowned. This court held it was for the jury to say whether, under the circumstances, it was negligence in the city not to have erected a proper barrier at such a point. If such omission were negligence, then that condition interposed between the originating cause, the blowing of the whistle, and the event, so as to constitute the negligent omission the efficient and proximate cause of the loss. To the same effect are Alger v. Lowell, 3 Allen, 402; Norris v. Litchfield, 35 N. H. 271; Joliet v. Verley, 35 Ill. 58.

The owner of the ferryboat in this case, on whom was the duty of care according to the circumstances, ought to have foreseen such a result because it was natural and probable, and have guarded against it by a sufficiently strong rail. The fact is he did foresee it, but negligently did not guard against it. His business was to ferry persons and vehicles across a navigable river at a point where other water craft were constantly passing and repassing. When approaching each other, passing or crossing each other's path, signaling or warning by steam whistles is the settled custom. Whether any less startling signal might, with comfort and safety, have been adopted, has not yet been determined; it is now, and has been, since the use of steam power, the recognized method of communication between steam vessels. He knew this, and could not have been ignorant of the fact that fright by a screeching whistle was a constant menace to the safety of the animals and those having them in charge on that boat. Horses will take fright at just such noises, especially in such a situation, penned up on a boat. That, when frightened, they would press against each other and the guardrails, he was bound to know, for he was bound to have such knowledge of his business as would enable him to conduct it with reasonable safety to the public, whose patronage he invited.

If the blowing of a steam whistle by a passing vessel had been out of the ordinary course of things, or if it were out of the ordinary and usual habit of horses to take fright at such a sound, he would not have been expected to foresee and provide against such an accident; ordinary care would not have required precaution against extraordinary contingencies. But here, the breaking of the bar, by the pushing of a frightened horse against it, was the natural and probable consequence of putting such a defective bar there; and this was the negligence, which, under the circumstances, was the proximate cause of plaintiff's injury.

The learned judge of the court below, in his opinion on the reserved point, has very clearly distinguished this from the cases cited and claimed to establish the blowing of the whistle as the proximate cause.

The assignments of error are overruled, the judgment affirmed.