Wilson v. Alexander.

## J. R. WILSON *v.* O. ALEXANDER.

## (*Jackson,*   April Term, 1905.)

1. **SUPREME COURT PRACTICE.** Theory of facts most favorable to the party successful below must be adopted, when.

   In disposing of an assignment of error that there is no evidence to sustain the judgment rendered by the circuit judge, the supreme court must adopt that theory of facts most favorable to the party successful below. (*Post, pp.* 128, 136.)

2. **SAME.** Same. Questions of fact and law raised by assignment of error that there is no evidence to sustain the judgment.

   An assignment of error that there is no evidence to sustain the judgment rendered by the circuit judge always raises a question of law as well as one of fact, namely, whether the facts, treated as most favorable to the party successful below, justify in law the decision reached, or the judgment rendered by the circuit judge. (*Post, pp.* 128, 129.)

3. **MASTER AND SERVANT.** Operator of machinery of carrier presumed to be servant of carrier, when.

   The unexplained fact that one is seen operating the machinery of a carrier is sufficient to justify the conclusion or inference that such person is acting as servant of the carrier, if there is nothing in the manner or circumstances of the occurrence to negative such conclusion. (*Post, p.* 130.)

4. **LANDLORD AND TENANT.** Tenant holding over continues on same conditions as under preceding term.

   A tenant holding over after the expiration of his term continues to occupy the relation of tenant towards his former landlord on the same condition as those of the preceding term. (*Post, p.* 131.)

   Cases cited and approved:  Shepherd v. Cummings, 1 Cold., 354; Noel v. McCrory, 7 Cold., 623; Brinkley v. Walcott, 10 Heis.,

22; Hammond v. Dean, 8 Bax., 193; Hendrixson v. Cardwell, 9 Bax., 391.

5. **SAME. Same. Facts justifying finding that the relation was terminated.**

Where a tenant continued to operate a ferry after the expiration of his term, and on the occurrence of an accident by which the mules of another were drowned in the act of ferriage, the land-lord, though an old man, braved the wintry weather of January, and went to the ferry, a distance of twenty miles, and investigated the matter, thus disclosing such great concern and interest as justified the court in finding that the tenant was then acting as servant of his former landlord, and not as his tenant. (*Post, pp.* 131, 132.)

6. **FERRIES. Liability of ferryman arises as soon as he directs team to be driven on ferryboat.**

A ferryman becomes liable as such for the safety of a team which he undertakes to transport as soon as the operator of the ferry directs the driver of the team to drive upon the ferryboat, (*Post, pp.* 133-135.)

Cases cited and approved: Cohen v. Hume, 1 McCon̄ (S. C.), 439; May v. Hanson, 5 Cal., 360; Blakeley v. LeDuc, 19 Minn., 187; Willoughby v. Horidge, 12 C. B., 742, 74 E. C. L., 742; Richards v. Fuqua, 28 Miss., 792.

7. **SAME. Negligence in ferryman in not securing boat to bank, and in permitting holes in floor of boat.**

A ferryman undertaking to transport a team of mules and the wagon to which they were hitched is guilty of negligence in not having his boat secured to the bank, and in permitting holes in the floor of the boat, through which water could be seen and also in not anticipating that the mules might back off the boat before they were safely upon it. (*Post, pp.* 132, 133, 135, 136.)

Cases cited and approved: Sanders v. Young, 1 Head, 220, 221; Willoughby v. Horidge, 12 C. B., 742, 74 E. C. L., 742; Richards v. Fuqua, 28 Miss., 792; Sturgis v. Kountz, 165 Pa., 358; Lewis v. Smith, 107 Mass., 334.

Wilson v. Alexander.

8.   **SAME.**   Driver of team is not guilty of contributory negligence
in driving on the boat at invitation of ferryman, when.
  It is not contributory negligence on the part of the driver of a
·  team to go upon the ferryboat at the invitation of the ferryman,
although he knows that the boat is not fastened to the bank, ·
for he may rely upon the skill and knowledge of the ferryman.
(*Post, pp.* 132, 135, 136.)

9.   **NEW TRIAL.**   Not for newly discovered evidence as to mere
date of conversation substantially admitted to be correct, when.
  Surprise in the evidence of a certain witness as to the date of a
conversation, and the discovery of new contradictory evidence,
is not ground for a new trial, where the party applying there-
for substantially admitted in his evidence that the conversation
referred to took place on the date specified, but denied the
things were said in that conversation which the witness claimed
were said, and the newly discovered witness does not undertake
or propose to testify as to the substance of the conversation, nor
that he was present thereat.   (*Post, pp.* 136, 137.)

FROM HAYWOOD.

Appeal from the Circuit Court of Haywood County.
—J. R. BOND, Judge.

KING & WILLIS, for plaintiff in error.

BATE BOND, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought to recover damages for the
negligent drowning of two mules at a ferry in Haywood

county, alleged to belong to the defendant below, Wilson, plaintiff in error here. The case was heard before the circuit judge without the intervention of a jury. A judgment was rendered in favor of the defendant in error for $303, the value of the mules and the harness on them at the time, also sued for.

The theory of the plaintiff below was that the ferry was both owned and operated by Wilson at the time of the injury; that the person then actually in charge of the ferry and operating it, one Ike Williamson, was the servant or employee of the defendant Wilson.

The defendant below advanced two theories. The first one was that he had sold the ferry and the land adjoining it to Ike Williamson by parol, and that when the injury occurred, January 11, 1904, his vendee, Williamson, was operating the ferry on his own account, as owner. His second theory is that, if the first be not made out in the evidence, then that Williamson was his tenant for the year 1903, and was holding over for the year 1904 on the same terms under which he had rented the property for the previous year.

The chief error assigned by defendant below on his appeal to this court is that there is no evidence to sustain the judgment rendered by his honor the circuit judge.

In disposing of this assignment, two principles must be kept in view. The first is that the theory of the facts most favorable to the party successful below must be the one adopted here. The second is that the assign-

ment we are to consider always raises a question of law as well as one of fact, that is, treating as established the version of the facts most favorable to the party successful below, the question always arises, do these facts establish in law a ground for relief, or a defense, as the case may be; in short, do these facts justify in law the decision which the lower court reached, whether for plaintiff or defendant?

We shall, for convenience, take up at this point the first theory of the defendant below—the theory of a parol sale on December 1, 1903, consummated by a writing on January 23, 1904.

The plaintiff below contends that the two witnesses who testify to the parol sale, Wilson and Ike Williamson, are both discredited; the first by contradiction of his evidence by other witnesses, and the second by direct impeachment through the testimony of witnesses who say that he is unworthy of belief; and, further, that the theory of a parol sale was a thing hatched up between these two after the accident to the mules, with a view to evading on the part of Wilson any claim which the plaintiff below might have against him. We are bound to say that there is some evidence to support both of these contentions, and we must treat the facts as so established. It results that we must conclude that there is nothing in defendant's first contention.

We shall consider together the defendant's second contention and the plaintiff's basic contention, the latter being, as stated, that Wilson, after January 1, 1904,

115 Tenn—9

was operating the ferry through Ike Williamson as his agent or servant.

There is no direct evidence to support this contention. We have seen that both Wilson and Williamson say that the latter was operating it under his alleged parol purchase, but as stated, this solution cannot be considered, because the circuit judge, on the grounds already stated, had the right to disbelieve the evidence of these witnesses, and we must assume that he did. The plaintiff says that it is shown that Wilson was the owner of the property at the time of the accident, and that Ike Williamson was operating it. There is evidence to support this conclusion, and it must be treated as established. Plaintiff also says that, if a man is seen operating the machinery of a carrier, this fact, unexplained, is sufficient to justify the conclusion that the latter is acting as a servant of the former. We think this is a sound general deduction, if there is nothing in the manner or circumstances of the occurrence to negative the conclusion. Applying this deduction, counsel for plaintiff below argues that, inasmuch as Wilson was the owner of the ferry, and Ike Williamson was operating it, and the evidence of neither of these witnesses is credible, and the fact is unexplained, we must conclude that Ike Williamson was in fact the agent or servant of the said Wilson.

But defendant's counsel says there is an explanation in the evidence. He insists as matter of fact that it is shown that Ike Williamson was the tenant of Wilson

for the year 1903, and, as matter of law, that the presumption would be, if the said Williamson held over after the expiration of his term, the year 1903, into the next year, 1904, he would occupy the relation of tenant to his former landlord on the same terms as those of the preceding year. The statement of fact as to the tenancy of 1903 is sustained by the witness Rawlings, and there is no evidence to the contrary. The statement of the legal principle, if there was in fact a holding over, is sustained by our own cases of *Brinkley* v. *Walcott,* 10 Heisk., 22, and *Hammond* v. *Dean,* 8 Baxt., 193; *Hendrixson* v. *Cardwell,* 9 Baxt., 391, 40 Am. Rep., 93; *Noel* v. *McCrory,* 7 Cold., 623; *Shepherd & Mitchell* v. *Cummings,* 1 Cold., 354; and the principle is a general one.

So, if we assume that Ike Williamson was holding over, the conclusion seems inevitable that he was operating the ferry at the date of the accident as the tenant of defendant, Wilson, and not as his agent or servant.

Plaintiff's counsel, however, refers to a circumstance which he insists furnishes evidence that Ike Williamson was the servant of Wilson, and not holding over as his tenant. This fact is that when the mules were drowned Ike Williamson immediately went to the home of Wilson, and told him of the calamity that had happened, and Wilson thereupon, though an old man, braved the wintry weather of January and proceeded to the ferry, twenty miles away, to investigate the matter, a journey that required of him two days and one

night going, pursuing his investigations, and returning; and that while near the ferry he hunted up the man who drove the mules, and made inquiry of him.

Counsel for the plaintiff rightly argued that these facts showed great concern on the part of Mr. Wilson. He argued further that this great concern was natural and reasonable if defendant Wilson was operating the ferry himself through Ike Williamson as his agent or servant, and was therefore responsible for the negligence of the latter; but quite unreasonable if the latter was only a tenant, and therefore responsible himself, only, for injuries. This view is certainly a strong one. The inference seems to be sound and just.

His honor the circuit judge had the power to choose between this view of the matter and the one just presented in favor of the defendant. He had the right to hold, and no doubt did hold, that the facts referred to furnished a direct inference of fact that Ike Williamson was holding after January 1st as the servant of Wilson, and not as his tenant; there was never in fact any holding over, hence no extension of the tenancy.

The assignment, therefore, that there was no evidence to support the judgment, must be overruled.

Another assignment raises the point that Hop Wilkes, the servant of plaintiff who drove the wagon, was guilty of negligence which proximately contributed to the injury.

The injury occurred in the following manner: The ferryboat was defective in that it had holes in the floor

Wilson v. Alexander.

through which the water could be seen. Likewise, it had no means of fastening it to the bank. When the mules were driven on, hitched to the wagon, they began to back, and in doing so pushed the hind wheels against the bank, and the boat out from under them in front, and so fell forward into the river, and were drowned. Plaintiff's servant, Hop Wilkes, knew that the boat was not attached to the bank, but was told by Ike Willimson, the servant of defendant in charge of the ferry, to drive on, which he did, with the result stated.

In *Sanders* v. *Young* it is said: "A ferryman is liable as a common carrier. . . . Irrespective of the statute of 1842, the keeper of a public ferry is bound to have a boat safe and sufficient for all of the uses and purposes incident to his employment. He is likewise bound at all times to have a skillful ferryman, and a sufficient force to manage the boat, and to take proper care of persons and all kinds of property received for transportation; and for all loss or injury occasioned by neglect of these duties and precautions he is liable." 1 Head, 220, 221, 73 Am. Dec., 175.

"As soon as the ferryman signifies his assent to receive horses and vehicles upon his boat, his liability as a common carrier attaches, and it necessarily continues until the property is landed." 12 Am. & Eng. Ency. Law (2d Ed.), p. 110.

In *Cohen* v. *Hume,* 1 McCord (S. C.), 439, wherein the above principle was expressed, it was held that the ferryman's liability as a common carrier attached, al-

though the vehicle was only upon the slip and was being driven by the servant of the owner.

In *May* v. *Hanson,* 5 Cal., 360, 63 Am. Dec., 135, wherein the injury complained of occurred while the wagon was being driven from the boat, the same rule was stated. In this latter case it is said: "The principle deduced from the authorities is that as soon as the ferryman signifies his assent or readiness to receive the passenger he becomes liable for his safe transit and delivery, and, is liable if any accident occurs, except by act of God or the public enemy."

"In two of the cases just cited the accident occurred in driving into the flat or boat, and in both cases it was held to be the duty of the ferryman to see that the teams were safely driven on board the boat. 'If,' says the court in those cases, 'the ferryman thinks proper, he may drive himself, or may unharness the team or unload them for the purpose of getting them safely on board; but if he permit the party to drive himself, he constitutes him quoad hoc his agent, and is responsible for all accidents.'" *May* v. *Hanson,* 63 Am. Dec., 137. And in *Blakeley* v. *Le Duc,* 19 Minn., 187 (Gil., 152), it was held that the ferryman's liability had attached, although only the front wheels of the stage coach had gotten upon the boat when the boat broke away from the bank.

In *Willoughby* v. *Horidge,* 12 C. B., 742, 74 E. C. L., 742, a ferryman was held liable for injuries to a horse which fell from the slip in leaving the boat, ow-

ing to the defective condition of the guard rail. In *Richards* v. *Fuqua's Adm'rs,* 28 Miss., 792, 64 Am. Dec., 121, a ferryman was held liable for loss of a wagon and mule attached thereto, caused by the boat, which was not provided with an apron, breaking from its moorings, owing to their defective condition, when the gunwale was struck by the rear wheels of the wagon.

*In Sturgis* v. *Kountz,* 165 Pa., 358, 30 Atl., 976, 27 L. R. A., 390, a ferryman was held liable for the loss of a horse which on being frightened by a whistle, backed from the boat through a defective guard chain.

In *Lewis* v. *Smith,* 107 Mass., 334, in which the plaintiff sought to recover for the loss of a horse, which was under his control while on the boat, and which fell from the boat for want of barriers at the forward end, evidence that the boat had been operated without barriers for thirty years without accident was held inadmissible.

We are of the opinion that in the present case the ferryman became liable for the property as soon as his agent directed the driver of the vehicle to drive upon the boat and that it was negligence on the part of the ferryman in not having the boat secured to the bank; also in permitting holes in the bottom of the boat; also in not anticipating just such an occurrence as happened, viz., that the team might back off of the boat they were safely placed upon it.

We are of opinion that it was not contributory negligence on the part of the driver of the vehicle to go upon

the boat at the invitation of the ferryman, although he knew the boat was not fastened to the bank. He had the right to rely upon the skill and knowledge of the ferryman. In deed, as has been seen, the property passed into the custody of the ferryman immediately upon his directing the driver to go upon the boat with the team.

It is insisted by the defendant that, even after the horses got into the water they might have been saved but for the negligence of the servant of the plaintiff in not properly assisting in the rescue of the animals. One of the witnesses of the defendant, who undertakes to prove this circumstance, is discredited by testimony of the witnesses who say he is unworthy of belief, and the other by self-contradictions, and we need not consider this matter further. The circuit judge no doubt disregarded their evidence entirely, as he had the right to do, and, following the rule already laid down as to taking the most favorable view in behalf of the party who was successful below, we must do the same.

It is insisted that a new trial should be granted because of surprise in the evidence of one Dickinson as to the fixing of a certain date and the discovery of evidence whereby it could be shown that Dickinson was incorrect. We think this is immaterial. It is substantially admitted by the defendant, Wilson, in his testimony that the conversation referred to did take place on the date fixed by Dickinson, but he denies that the things were said in that conversation which Dickinson

claims were said. The new witness does not undertake to say anything about the substance of the conversation, and does not say that he was present thereat. His evidence would be of no service, and a new trial should not be granted therefor. *Turnley* v. *Evans,* 3 Humph., 223.

The foregoing covers the substance of all of the matters contained in the several assignments filed, and, none of them being sustained, the judgment of the court below must be affirmed.